# United States Court of Appeals

## For the First Circuit

No. 01-1622

NORTH BRIDGE ASSOCIATES, INC., AND
RALPH H. SCOTT, III,

Plaintiffs, Appellants,

v.

BENJAMIN J. BOLDT, BOLDT FAMILY TRUST,
MARTHA'S VINEYARD HARBOR LANDINGS CONDOMINIUM TRUST,
AND ARTHUR D. SMITH,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Glenda H. Ganem, with whom Michael L. Snyder and McGovern,
Hug & Ganem were on brief, for appellants.
Peter E. Ball, with whom Seth B. Kosto and Hill & Barlow
were on brief, for appellees.

December 19, 2001

**COFFIN, <u>Senior Circuit Judge</u>.** Appellants claim that they twice were victims of real estate frauds perpetrated by appellee Benjamin Boldt and others.[1] They brought suit alleging a variety of state law claims and a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). The district court concluded, <u>inter alia</u>, that appellants could not show the pattern of racketeering activity required to support RICO liability and therefore dismissed the complaint.[2] Appellants argue that their factual allegations were sufficient to support recovery and that, in any event, the court should not have dismissed the complaint without providing them a hearing and an opportunity to amend or conduct discovery. We affirm.

## I. <u>Background</u>

In summarizing plaintiffs' allegations, we are mindful that we must accept the well pled facts of the complaint as true and

---

[1] We view the plaintiffs pragmatically as Ralph H. Scott III, his father, Ralph H. Scott II, and his mother, Betty Scott, although the suit technically is brought by Ralph III in his capacity as trustee for a family trust (Angels Realty Trust) and by a closely held corporation (North Bridge Associates, Inc.), whose officers and shareholders are the elder Scotts. <u>See</u> <u>infra</u> at 5. The appellees are Boldt, two trusts for which Boldt has served as trustee (Boldt Family Trust and Martha's Vineyard Harbor Landings Condominium Trust), and an attorney for Boldt Family Trust, Arthur D. Smith. In essence, this case involves the Scotts' claims that they were defrauded by Boldt, who is the only defendant in the RICO cause of action.

[2] The court dismissed the RICO claim with prejudice and the state law causes of action without prejudice.

-3-

indulge every reasonable inference in favor of allowing the lawsuit to proceed. See Tompkins v. United Healthcare of New England, Inc., 203 F.3d 90, 93 (1st Cir. 2000); Fed. R. Civ. P. 12(b)(6). We thus sketch the facts relating to the two alleged frauds as if they were proven.

Time-Share Scheme. Between 1977 and 1980, Ralph and Betty Scott purchased three time-share condominium unit intervals from appellee Martha's Vineyard Harbor Landings Condominium Trust ("Harbor Landings Trust"). Appellee Boldt, a Harbor Landings trustee, lent the Scotts about $6,500 toward the purchase price of the units in exchange for a promissory note ("the Note") and a security interest. The Note barred the Scotts from transferring title to the units and provided that transfer of the Note could result in its acceleration and foreclosure. The Note also provided that the Scotts would be liable for costs of collection, including reasonable attorney's fees.

Sometime later, the Scotts assigned title to the units to Angels Realty Trust ("Angels"), which was set up for the benefit of their children, and Boldt assigned the Note and Mortgage to appellee Boldt Family Trust. In 1992, Angels began withholding payments because Boldt refused to provide information about whether he was protecting the corpus of the Harbor Landings Trust. In retaliation, Boldt Family Trust in 1995 accelerated

-4-

the Note under the pretext that the Scotts had improperly transferred title to Angels. Boldt Family Trust threatened to institute foreclosure proceedings.

In response to Angels' request in July 1996 for a payoff figure, Boldt Family Trust demanded about $10,000 in principal, interest and legal fees. Through its counsel, appellee Smith, the Trust also instituted foreclosure proceedings. Angels paid the approximately $7,000 in principal and interest, but refused to pay "spurious and unsubstantiated legal fees."[3] In April 1997, the time-share units were sold at foreclosure. Appellants claim that Boldt and Smith fraudulently inflated legal fees for the purpose of bringing about foreclosure.

Lot 1 Fraud. In July 1978, Boldt sold Betty Scott approximately thirty acres of land, designated Lot 1, in Edgartown, Massachusetts. Scott informed Boldt that she intended to develop and subdivide the lot into single-family homes. At the time of purchase, the lot was not connected to a state road, and Boldt advised Scott that he would provide an easement through a neighboring property he owned. Boldt, however, failed to obtain permission for the easement from his partner, and he later offered Scott the alternative of obtaining

---

[3] In April 1997, the amount demanded for attorney's fees increased from about $3,000 to about $5,200.

-5-

access to the highway through purchase of a lot, No. 407, in an adjacent development, Edgartown Forest. The $12,000 purchase price included a $2,000 cash payment and a $10,000 note. Boldt, who had been hired to sell residential lots in Edgartown Forest, told Scott that he would pay the note because of his failure to secure the right of way that he previously had promised. Boldt, however, again failed to follow through.

In 1980, the Town of Edgartown granted Scott subdivision approval for Lot 1 based on plans showing highway access across Lot 407. Construction of roads, utilities and foundations for forty-three residences was begun, and development costs reached approximately $2 million. In November 1987, Scott conveyed her interest in Lot 1 to appellant North Bridge Associates, Inc., whose officers, directors and shareholders are Scott and her husband.

Appellants contend that Boldt undermined the Lot 1 development by encouraging purchasers of lots in Edgartown Forest to take legal action to prevent highway access across Lot 407 from the North Bridge development. The property owners filed a lawsuit in October 1988. Although the litigation ultimately was unsuccessful, a *lis pendens* (notice of pending suit) was placed on Lot 1, prompting the bank that had advanced funds for the development to demand immediate repayment of its

-6-

loans.  The loss of funding, in turn, caused the development to fail.  North Bridge claims that Boldt urged the meritless suit so that he could reacquire Lot 1, which he later did at a mortgagee's sale.

In their complaint, appellants alleged violations of RICO,[4] and also brought state law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and unfair business practices in violation of Mass. Gen. L. ch. 93A.  In addition, Angels brought a state-law claim against Boldt and Boldt Family Trust for lender liability, and a claim against Smith alleging unjust enrichment.  Appellees filed a motion to dismiss that asserted a variety of defects in the RICO cause of action, including lack of particularity in the allegations and a failure to show a pattern of racketeering activity.

In a two-page decision, the district court ruled in favor of appellees "[f]or the reasons stated in [their] memorandum." The court noted that, had the complaint's only problem been its lack of particularity, appellants might have been given an opportunity to amend.  The court concluded that revision would be fruitless, however, because "the plaintiff has not, and

---

[4] The complaint alleged in Count VII that Boldt violated two RICO sections, but appellants seek review of only the claim under 18 U.S.C. § 1962(c).

evidently cannot, properly allege the required pattern of racketeering activity." The court declined to retain jurisdiction over the pendent state law claims and dismissed them without prejudice. This appeal followed.

## II. Discussion

We begin by examining de novo the court's conclusion that the complaint as filed is inadequate to support a RICO cause of action. Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 443 (1st Cir. 2000). Because we agree with that determination, we go on to consider whether appellants should have been afforded the opportunity to amend their complaint or obtain discovery before the RICO claim was dismissed with prejudice.

### A. The RICO Allegations

To state a claim under section 1962(c), a plaintiff must allege each of the four elements required by the statute: (1) conduct (2) of an enterprise, (3) through a pattern (4) of racketeering activity. Bessette, 230 F.3d at 448; Feinstein v. Resolution Trust Corp., 942 F.2d 34, 41 (1st Cir. 1991) (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)); see also 18 U.S.C. § 1962(c). Appellees argue that the complaint in this case was deficient in multiple respects, but we focus on the shortcomings in the "pattern" showing because we view them as both serious and irremediable.

By statute, a successful RICO plaintiff seeking to establish a pattern must show at least two predicate acts of "racketeering activity," conduct that includes mail and wire fraud. Efron v. Embassy Suites (P.R.), Inc., 223 F.3d 12, 15 (1st Cir. 2000) (citing 18 U.S.C. § 1961(1)(B), (5)). In addition, the plaintiff must demonstrate that the "'predicates are related, and that they amount to or pose a threat of continued criminal activity,'" id. (quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989)). Acts are "related" if they have "'"the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."'" Id. (quoting H.J., 492 U.S. at 240 (quoting 18 U.S.C. § 3575(e))). To establish continuity, "the plaintiff must show that the related predicates 'amounted to, or posed a threat of, continued criminal activity.'" Feinstein, 942 F.2d at 45 (quoting Fleet Credit Corp. v. Sion, 893 F.2d 441, 445-46 (1st Cir. 1990)).

Plaintiffs specifically allege two predicate acts, both of which are mailings connected with the time-share scheme. A letter sent on January 2, 1997, demanded payment of the full sum due on the Note, plus legal expenses. A second letter was sent on April 2, after the Note had been paid, stating that Boldt

-9-

would "continue with foreclosure proceedings" if the legal fees were not paid. Appellants contend that, by demanding "manufactured legal expenses," these mailings aided the scheme to unlawfully force Angels into default on the Note, and thus constituted mail fraud.

Assuming that these two letters are related acts of mail fraud, they nonetheless fail to support a RICO cause of action because continuity is wholly lacking. Predicate acts can satisfy the requirement of continuous criminal activity if they either comprise a closed series of past conduct that "'extend[s] over a substantial period of time,'" or indicate a "realistic prospect" that they will "'extend[] indefinitely into the future,'" Feinstein, 942 F.2d at 45 (quoting H.J., 492 U.S. at 242); see also Efron, 223 F.3d at 16.

The two 1997 letters are inadequate to establish a closed period of continuous criminal activity. Both the number of acts (two) and the span of time over which they extend (four months) were minimal. See H.J., 492 U.S. at 242 ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement . . . ."); Sion, 893 F.2d at 447 ("Had the number of acts . . . been few or the period of time short, the predicate acts would not have amounted to continued criminal activity."). Although appellants

-10-

sought to expand both the length of time and the number of predicate acts by alleging that Boldt "used the United States Mail" on at least two occasions in 1988 or later in furtherance of the Lot 1 fraud, they failed to identify the time, place or content of any particular mailing. Such vague allegations are insufficient:

> As in any other fraud case, the pleader is required "to go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud." . . . It is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of predicate acts to the time of trial.

Feinstein, 942 F.2d at 42 (quoting New England Data Servs., Inc. v. Becher, 829 F.2d 286, 291 (1st Cir. 1987)).

Nor have appellants shown that the two 1997 mailings foreshadowed similar acts occurring repeatedly into the future, thereby establishing "open-ended" continuity and the prospect of "long-term criminal conduct," H.J., 492 U.S. at 242. The alleged fraud concluded with the foreclosure of appellants' time-share units, and they allege neither an ongoing relationship between themselves and appellees nor any other similar scheme involving others. The complaint's allegations, though perhaps supporting fraud and other state-law claims, thus do not establish the continuity necessary to prove a violation of the RICO statute.

B. Discovery, Amendment and Hearing

Appellants invoke our decision in Becher, 829 F.2d at 290-92, to argue that, even if the district court correctly ruled that their complaint was deficient, it improperly failed to grant them the opportunity to remedy the complaint's shortcomings. They also assert that the court should not have granted defendants' motion to dismiss without conducting a hearing.

In Becher, we concluded that the plaintiff's complaint did not satisfy the requirement of Fed. R. Civ. P. 9(b) that fraud be pled with particularity, but also ruled that the district court abused its discretion in dismissing the case without providing further opportunity for discovery and amendment in light of the plaintiff's "specific allegations" and the difficulties of pleading a RICO mail or wire fraud case. See id. at 292.

> We held, in essence, that there are certain circumstances in the RICO context where the district court must not only apply Rule 9(b), but must proceed a step further before granting a motion to dismiss:
>
>> In an appropriate case, where, for example[,] the specific allegations of the plaintiff make it likely that the defendant used interstate mail or telecommunications facilities, and the specific information as to use is likely in the exclusive control of the defendant, the court should make a second determination as to whether the claim as presented warrants the allowance of

-12-

> discovery and if so, thereafter provide an opportunity to amend the defective complaint.

Feinstein, 942 F.2d at 43 (discussing and quoting Becher, 829 F.2d at 290).

This is not a case to which the generosity of our approach in Becher is applicable. The plaintiff there had "assiduously pursued discovery," Feinstein, 942 F.2d at 43 n.10, its allegations rendered it likely that the defendants committed mail or wire fraud, see Becher, 829 F.2d at 292, and the original allegations likely were deficient only because the details of the relevant communications were "peculiarly within defendants' knowledge and difficult to expose," id.

The present case is dissimilar in several respects. First, appellants never asked for the opportunity to conduct discovery, even in their opposition to defendants' motion to dismiss. Second, their complaint does not present "specific allegations" of additional mail or wire fraud episodes whose details could be expected to be exclusively within the defendants' knowledge. Rather, as noted above, appellants broadly allege that at least two mailings were sent in connection with the Lot 1 fraud, but they offer no "detailed facts that make it seem likely that interstate mail or telecommunications facilities were used," id. at 291. To the contrary, the allegations strongly suggest a series of verbal communications between Boldt and the purchasers

-13-

of residential lots in the Edgartown Forest development.  Though perhaps aiding a claim of fraud, such conversations would not bolster appellants' RICO claim.  See Sion, 893 F.2d at 445 ("[A]cts of common law fraud that do not implicate the mails (or the wires) do not constitute 'racketeering activity' under the definition found within the RICO statute.").  Finally, it is not simply details that appellants lack, but the substance of a RICO claim.  The district court was not obliged to give appellants a second chance to construct a pattern of racketeering activity out of two separate real estate frauds.  See Ahmed v. Rosenblatt, 118 F.3d 886, 889-90 (1st  Cir. 1997) (application of Becher "second determination" approach "is neither automatic, nor of right, for every plaintiff").

Appellants also argue that it was impermissible for the district court to grant the motion to dismiss without conducting a hearing.  It does not appear from the record, however, that appellants sought a hearing under either Fed. R. Civ. P. 12(d), which provides for preliminary hearings "on application of any party," or District of Massachusetts Local Rule 7.1(D), which provides, in substance, that a party who desires a hearing must ask for one.  Instead, in their 24-page response to appellees' motion, appellants requested thirty days to file an amended complaint to cure any defects the court found in their original

pleading.  It can hardly be error for the court to withhold an opportunity appellants did not request to add to their already substantial response to the motion.  Cf. In Re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Litig., 56 F.3d 295, 302 (1st Cir. 1995) (key factor in reviewing a refusal to grant a hearing is whether "'the parties [had] a fair opportunity to present relevant facts and arguments to the court, and to counter the opponents' submissions'") (quoting Aoude v. Mobil Oil Corp., 862 F.2d 890, 894 (1st Cir. 1988)); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993) (motions typically may be "heard" effectively on the papers).

## III. Conclusion

The district court properly found that appellants' complaint fails to establish a RICO cause of action, and the court acted within its discretion in refusing to allow plaintiffs a second chance to generate a pattern of racketeering activity through discovery and amendment.  The lack of a hearing on the dismissal motion was of no consequence.  Having concluded that the RICO claim was unavailing, the court properly dismissed the pendent state law claims without prejudice.

Affirmed.