# United States Court of Appeals
## For the First Circuit

No. 04-2435

ANA M. CORDERO-HERNÁNDEZ,

Plaintiff, Appellant,

PARIS PARIS BOUTIQUE, INC.,

Plaintiff,

v.

MARÍA TERESA HERNÁNDEZ-BALLESTEROS; GEORGE MOLL;
ARNALDO PEÑALVERT-VÁZQUEZ; ELBA MARÍA MARTÍNEZ;
FIRSTBANK OF PUERTO RICO, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Torruella, Circuit Judge,
Cyr and Stahl, Senior Circuit Judges.

Alexander Zeno for appellant.
William Santiago-Sastre, with whom Meléndez Perez, Moran &
Santiago was on brief, for appellee First Bank of Puerto Rico.

June 2, 2006

**STAHL**, <u>Senior Circuit Judge</u>.  The Paris Paris Boutique was a small shop located in San Juan, Puerto Rico.  It was founded several years ago by María Teresa Hernández-Ballesteros (Hernández), an entrepreneur who has also founded and operated at least two other shops in San Juan.  Under Hernández's management, the shop apparently dealt primarily in women's clothing and accessories, and had at least two employees, a professional manager and a sales clerk.  It purchased clothing from Puerto Rican and New York-based retailers and sold the goods to walk-in customers, primarily targeting passing tourists.

Hernández decided to give up the business in 2000 or 2001, and put Paris Paris Boutique, Inc. on the market.  Among a number of interested buyers, Ana M. Cordero-Hernández (Cordero) won out.  This suit was brought by Cordero and the boutique over the fallout from that purchase.  Cordero and the Paris Paris company alleged various fraud- and contract-related claims against Hernández and George Moll, who was the realtor on the sale of the boutique.  They also brought claims against Arnaldo Peñalvert-Vázquez (Peñalvert), Hernández's accountant; FirstBank of Puerto Rico, which holds the mortgage that Cordero assumed when she purchased the property; and Elba María Martínez (Martínez), the proprietor of the building in which the Paris Paris was located.

Cordero purchased 100% of the shares of the boutique from Hernández on St. Valentine's Day, 2001.  The purchase price for the

-2-

store was $69,000 in cash and the assumption of $156,000 in debt owed by Hernández to FirstBank. Included in the deal were promises by Hernández to offer training to Cordero in dealing with suppliers and in the other particulars of running the store, but none of these promises were ever honored. While Cordero had also been promised an easy and immediate monthly profit, earnings lagged behind expectations, and Cordero and the store quickly began to experience financial difficulties. Cordero argues that the store's plight was worsened by the fact that Hernández almost immediately set up a new dress shop, named El Sol de Puerto Rico, in the same building as the Paris Paris.

Soon after she established El Sol, Hernández put it on the market, just as she had done with the Paris Paris. Believing that she had herself been defrauded, suspecting that Hernández was planning to perpetrate a similar fraud in the upcoming sale of El Sol, and hoping to catch Hernández in a pattern of fraudulent activity, Cordero hired two investigators to come to El Sol and pretend to be interested purchasers. Hernández allegedly made representations about the new store to this pair, Damian Soto and Ester Morell, that sounded in the same register as her representations to Cordero about Paris Paris -- high margins, valuable inventory, established clientele, and easy money. The hired detectives did not, of course, buy El Sol, and neither did

anyone else.  Finding no buyer, Hernández abandoned the store less than a year after opening it.

Meanwhile, in May 2001, with her financial problems worsening, Cordero and the Paris Paris company filed voluntary petitions for bankruptcy protection under Chapter 11.  In the course of the bankruptcy proceedings, Cordero attempted to assert a handful of legal claims against Hernández and the other defendants in this action, all involved in the sale of the Paris Paris or the establishment of El Sol, and these claims were eventually removed to federal district court.  In her original complaint in the district court, Cordero alleged that Hernández and her agents had misrepresented the value and profitability of the Paris Paris Boutique, and that Hernández had breached her contract with Cordero and had engaged in unfair competition by opening the competing store in the same building as the Paris Paris.  In particular, she alleged that Hernández, personally and through Moll and Peñalvert, misled her about the past profitability of the store and about its likely value going forward.  She also alleged that FirstBank of Puerto Rico, which provided partial financing for the deal, had failed to abide by several of its own risk-management policies, was less than fully candid with Cordero about its interest in the transaction going ahead, and so ultimately contributed to Cordero's injuries.  In addition, Cordero also claimed that Hernández had violated an implied contractual

obligation not to compete with her by opening up the new shop in the same building as the Paris Paris, and that Martínez, who leased space to both the Paris Paris and El Sol, violated a term of Cordero's lease by permitting Hernández to open her new store next door to the Paris Paris.

Cordero amended her complaint in April 2002 to include a cause of action under the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1964(c). In the newly added portion of the complaint stating a claim under RICO, Cordero incorporated her fraud allegations against all defendants, and further alleged that the defendants together comprised an enterprise organized for the purpose of defrauding potential buyers of the boutiques they developed. The specific RICO predicate that Cordero attempted to allege was interstate wire fraud under 18 U.S.C. § 1343 (defining wire fraud) and § 1961(5) (incorporating wire fraud as a RICO predicate): Cordero claimed that Hernández, along with other defendants, made fraudulent representations first to Cordero and later to her hired investigators, and that some of these representations were made over the phone. Cordero never explicitly alleged, however, that the phone calls were interstate calls nor stated specifically during which calls, when, and by whom, the fraudulent representations were made, failings which are the nub of this appeal.

A drawn-out discovery battle ensued, during which Cordero filed no fewer than four motions to compel discovery from a seemingly reluctant set of defendants, and the court noted in one of its orders compelling discovery that it was running out of patience with the parties. Early on in the discovery period, defendants moved together for 12(b)(6) dismissal for failure to state a claim, and Cordero responded. Discovery proceeded apace, while the motion to dismiss lingered on the docket. A year later, the district court issued an order dismissing the RICO action with prejudice pursuant to the defendants' 12(b)(6) motion and dismissing the state law claims, over which it claimed[1] only supplemental jurisdiction, without prejudice.[2]

---

[1]The district court asserted that its jurisdiction over the state law claims was under the supplemental jurisdiction provision of 28 U.S.C. § 1367, and declined to exercise that supplemental jurisdiction. Never discussed was the possibility that the state law claims related to the original bankruptcy proceedings and thus came within the court's bankruptcy jurisdiction under 28 U.S.C. § 1334, but appellant does not raise the issue and does not seek independent reinstatement of the state law claims.

[2]Plaintiff accuses the court of dismissing the case sua sponte, but there is some difference between dismissal of a claim that has never been challenged, see, e.g., Cepero-Rivera v. Fagundo, 414 F.3d 124, 130 (1st Cir. 2005), and dismissal where, as here, the court acts in response to a defendant's motion but on grounds not fully briefed by the movant. Nevertheless, if the district court had any doubt that plaintiffs understood that they were in danger of having their complaint dismissed on grounds they had not had an opportunity to argue, the safest course would have been to give notice of the proposed grounds for dismissal and to take arguments on the question. See Ruiz Varela v. Sanchez Velez, 814 F.2d 821, 823 (1st Cir. 1987). While here we think the defendants may not have raised the issue with sufficient clarity to have given plaintiffs reason to anticipate dismissal on those

In order to make out a civil claim under RICO by way of wire fraud, a plaintiff must allege that a group of defendants "engaged in a scheme to defraud with the specific intent to defraud and that they used . . . the interstate wires in furtherance of the scheme," McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc., 904 F.2d 786, 790 (1st Cir. 1990), and in particular that defendants engaged in at least two instances of such predicate wire use, Ahmed v. Rosenblatt, 118 F.3d 886, 888 (1st Cir. 1997). The Federal Rules of Civil Procedure usually permit a plaintiff to make general allegations in a complaint, see Fed. R. Civ. P. 8, but require more specific pleading where a plaintiff alleges fraud, see id., 9(b). In particular, under Rule 9 "the pleader is required 'to go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud.'" N. Bridge Assocs., Inc. v. Boldt, 274 F.3d 38, 43 (1st Cir. 2001) (quoting Feinstein v. Resolution Trust Corp., 942 F.2d 34, 42 (1st Cir. 1991)). "It is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of predicate acts to the time of trial." Id. (quoting Feinstein, 942 F.2d at 42). As noted, while plaintiffs asserted conclusorily in

grounds, we find any resultant error to have been harmless. If there was error, it did not unduly prejudice appellant, because she has now fully argued her position, both here and in a motion to reconsider submitted to the district court, and after hearing arguments we are convinced that the substance of the district court's determination was correct. See Cepero-Rivera, 414 F.3d at 130.

their amended complaint that they were alleging wire fraud, they did not make the requisite allegations identifying specific interstate phone calls by time, place, and content.[3]

Failure to plead with specificity in a RICO action may merit dismissal. See id. at 44. Because, however, it will often be difficult for a plaintiff to plead with specificity when the facts that would support her claim are solely in the possession of a defendant, we held in New England Data Services, Inc. v. Becher, 829 F.2d 286 (1st Cir. 1987), that a court faced with an insufficiently specific claim may permit limited discovery in order to give a plaintiff an opportunity to develop the claim and amend the complaint. Id. at 290. Among the particular facts that a plaintiff might under some circumstances have difficulty proving without access to discovery is whether or not a particular

---

[3]On a motion to dismiss, a court is required to accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. In re Stone & Webster, Inc., Sec. Litig., 414 F.3d 187, 200 (1st Cir. 2005). The court need not accept a plaintiff's assertion that a factual allegation satisfies an element of a claim, however, nor must a court infer from the assertion of a legal conclusion that factual allegations could be made that would justify drawing such a conclusion. Resolution Trust Corp. v. Driscoll, 985 F.2d 44, 48 (1st Cir. 1993); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004) ("[T]he court will not accept conclusory allegations concerning the legal effect of the events the plaintiff has set out if these allegations do not reasonably follow from the pleader's description of what happened . . . ."). The court was under no obligation to read the plaintiffs' complaint, which failed to allege with specificity the factual predicates for a RICO violation, as implying that a RICO claim could have been made out with specificity.

communication passed over the interstate wires, and Becher discovery therefore may be called for, though is not necessarily required, when the interstate nature of a wire transaction is in question. But Becher discovery (with concomitant leave to amend) "is neither automatic, nor of right, for every plaintiff." Ahmed, 118 F.3d at 890. The threshold questions are whether "the specific allegations of the plaintiff make it likely that the defendant used interstate mail or telecommunications facilities, and the specific information as to use is likely in the exclusive control of the defendant." Becher, 829 F.2d at 290.

The court here considered, and decided against, permitting further discovery under Becher. In doing so, the court noted that discovery had already proceeded for three years. Finding inter alia that the plaintiffs had not been diligent in attempting to collect information that would allow them to fully allege a RICO claim, cf. N. Bridge Assocs., 274 F.3d at 44, the court thought there was no need to drag the case on further, and dismissed the RICO claim with prejudice and the state law claims without. Cordero timely appealed, arguing that the court's denial of Becher discovery was in error.[4] We conclude that the district

---

[4]The only issue on appeal is whether the district court should have given plaintiffs both more discovery and subsequent leave to amend the complaint. This is because this case is not one in which the deficiency in the pleading is a mere drafting oversight. The question of Becher discovery plays no role in such a case, because the issue of a drafting oversight or other inadvertent deficiency in the pleading is a formal one that goes to the sufficiency of the

court's order dismissing the suit was justified. There was no showing under Becher that the defendants were in exclusive control of any crucial information, and appellant had not demonstrated a high likelihood that useful information would result from further discovery.

First, there is little indication that the discovery requested by the appellant would have produced any information that would have permitted her to allege the requisite two interstate communications with particularity. Appellant conceded below, in her motion to reconsider, that all she was seeking was the fulfillment of then-pending discovery requests, but every indication is that appellant's discovery efforts were never directed towards producing information that would enable her to make out a RICO claim. The district court's opinion noted that discovery had been underway for three years, and Cordero avers that throughout that time the defendants in the case were stubbornly

written complaint itself and not to the underlying case that the complaint is supposed to express. In such a case, the liberal approach the Federal Rules take to pleading would almost certainly demand that a plaintiff be given leave to amend. Here, however, appellant has conceded that leave to amend without more discovery would be useless. In a motion to reconsider filed with the district court after the entry of judgment, plaintiffs asserted that they "could not specify" which communications were interstate communications because they did not have information to back up such specific claims. On appeal, appellant argues on various grounds that leave to amend without further discovery should have been granted, but those arguments are precluded by this earlier concession. Leave to amend standing alone is thus off the table, and we need consider only whether further discovery should have been ordered under Becher.

resistant to her efforts to eke information out of them.  She attributes her lack of knowledge about the interstate nature of any communications to the defendants' foot-dragging throughout the discovery process.

Cordero cites to her early discovery requests pressing Hernandez and other defendants for telephone records in order to demonstrate that continued discovery would have been useful, but it would require a strained reading of those requests to conclude that Cordero had requested phone records relating to the sale of Hernandez's stores or that any potentially useful request was pending at the time the case was dismissed.[5]  The discovery

_____

[5]The requests are unhelpful to appellant for two reasons. First, George Moll, the only defendant now argued to have engaged in interstate communications, responded to the request to the apparent satisfaction of the plaintiffs, meaning no discovery request was pending against the one defendant whose response could perhaps have fleshed out the RICO claim.

Second, the requests asked various defendants for records showing dialed telephone numbers and to identify "which of those numbers belong to a potential customer of Paris Paris Boutique, Inc., El Sol de Puerto Rico, and/or any other business deal between yourself and Mrs. Hernandez-Ballesteros."  The implication on appeal is that this request would have produced identifiable records of telephone calls involving the sale of the Paris Paris, but the request asks only for numbers "belong[ing] to customer[s] of" Hernandez's various enterprises, and not for potential buyers of those stores.  Were there any doubt about how expansively the question might be construed, we note that Moll responded to the discovery request by saying, "I don't have that kind of information.  As a real estate broker, my job merely consisted in obtaining a buyer for the purchase of Hernandez's business(es).  As such, I was contacted by the prospective buyers of Paris Paris' shares and of El Sol de Puerto Rico."  Plaintiffs' acceptance of this response indicates that Moll correctly interpreted the question to relate only to customers and not buyers of the stores, and that plaintiffs never sought telephone records relating to the

-11-

requests do not suggest that Cordero would be able to produce information about the interstate nature of any communication with any particular person during the course of the (allegedly fraudulent) sale of the Paris Paris. The district court, which has the best information about compliance with discovery, evidently so concluded, disagreeing with plaintiffs that the problem was a problem of obstruction on the part of the defendants.[6] It did not demonstrably err in concluding under Becher that further discovery was unlikely to produce information that would make it possible for plaintiffs to satisfactorily plead their complaint.

Nor is it anywhere explained why Cordero could not have alleged interstate communications on the basis of information already in her possession if there was any interstate activity to be alleged. Cordero had hired detectives who allegedly spoke on the telephone with defendant Moll. If these detectives called Moll while Moll was in Puerto Rico and they were themselves in New York

---

sale of the store.

[6]Cordero filed four motions to compel discovery. The first, second, and fourth were all granted, and the third was never decided. The docket sheet thus indicates that Cordero had some difficulty getting the defendants to produce some of the information she requested. On the other hand, it is instructive that the district court, while it threatened to impose sanctions on the defendants at one point, and on both parties at another, never did impose such sanctions, suggesting that in its view the parties' responses to one another's discovery requests were at least minimally satisfactory. Because management of discovery is primarily the business of the district court, the record ultimately compels the conclusion that the district court was satisfied with the efforts each party made to comply with discovery.

or otherwise in another state, that information was in fact uniquely in the plaintiffs' possession, not the defendants'. Thus it is not clear why Cordero insists on appeal that discovery was necessary in order to reveal information about the interstate nature of any communications.

Becher discovery balances the general liberal pleading policy of the Federal Rules against the more specific policy that requires heightened pleading in fraud cases in order to filter out frivolous, harassing claims. The decision to grant or deny Becher discovery must be based, in the final analysis, on good, common sense, and here there is every reason to doubt that any of the calls between Cordero and the defendants were interstate calls, as all parties were, so far as the record reveals, based in Puerto Rico at all relevant times.[7] Cf. N. Bridge Assocs., 274 F.3d at 44 (where allegations "strongly suggest" fraud was conducted without use of interstate wires, Becher discovery was inappropriate). It is also telling that Cordero failed to even allege interstate communications on information and belief. Without any independent reason to believe that the alleged calls were interstate

_____

    [7]The hired detective, Esther Morrell, was a resident of New York, a fact noted in the complaint. Her affidavit, however, gives no indication that she performed any part of her investigation while based anywhere but Puerto Rico. The question on appeal under Becher is whether the district court was compelled to conclude that it was likely that additional discovery would have produced useful evidence, and the state of residence of the detective is not enough, standing alone, to tip the balance in the appellant's favor.

-13-

communications, the district court could permissibly have weighed Cordero's failure to allege such in favor of an inference that the calls were all intrastate. While information-and-belief pleading is not sufficient to satisfy the rule requiring pleading with particularity, see Becher, 829 F.2d at 288 (citing Wayne Investment, Inc. v. Gulf Oil Corp., 739 F.2d 11, 13 (1st Cir. 1984)), in this case such pleading would have at least given the district court some reason to think that interstate communications might be at issue. Because there was no allegation that any calls went over the interstate wires nor a credible suggestion from the plaintiffs that the obstacle to their making such allegations was insufficient discovery, this case appears on its face to be not a RICO action, but an instance of that "localized fraud" that "Congress intended to exclude from the scope of" the wire fraud statute. United States v. Giovengo, 637 F.2d 941, 943 (3d Cir. 1980). Since, as we have noted, the appellant has conceded that on the basis of information currently in her possession she could not make out a RICO claim, and because the district court by all appearances correctly determined that further discovery was unlikely to produce more and relevant information, it properly dismissed the suit.

For the foregoing reasons, the order of the district court is **<u>affirmed</u>**.

**Dissent follows.**

**CYR, Senior Circuit Judge (dissenting).** The majority opinion, affirming the dismissal of the Cordero RICO claim, with prejudice, fundamentally misinterprets and misapplies circuit precedent, see New England Data Servs., Inc. v. Becher, 829 F.2d 286 (1st Cir. 1987), and discounts that (i) the plaintiff diligently complied in good faith with all district court procedures and orders; (ii) the defendants repeatedly and without explanation flouted district court orders directing them to respond to the plaintiff's legitimate discovery requests; and (iii) the district court's sua sponte alternative rationale for the Rule 12(b)(6) dismissal – never raised in the defendants' motion to dismiss – unfairly blindsided the plaintiff. Therefore, I respectfully dissent.

Cordero contends on appeal that, even assuming arguendo that her amended complaint did not allege with sufficient particularity the requisite interstate communication to establish predicate acts of mail/wire fraud, she was and remains prepared to amend the complaint to cure the putative pleading defect. Specifically, she assures this court that she possesses a "good faith" basis for alleging that defendant George Moll telephoned her hired investigator, Esther Morell, at her New York residence for the purpose of arranging an appointment for Morell, posing as a prospective buyer, to visit the store. Further, Cordero maintains that she could amend her complaint to allege that the advertisement

-15-

relating to the sale of the store, which the defendants had placed in a local newspaper, would have reached prospective buyers beyond Puerto Rico.

However, the majority opinion tellingly fails to consider this pleading proffer. Moreover, it fails as well to explain why these allegations would not cure the putative pleading defect. The majority instead dismisses the Cordero argument on the ground that it was somehow reasonable for the district court, acting pursuant to its broad discretion under Becher, to dismiss the RICO complaint, with prejudice, because all parties in the case were based in Puerto Rico, and following three years of discovery it seemed unlikely that Cordero could establish that any interstate communication occurred during the course of the defendants' alleged scheme.

I

In order adequately to appreciate the gravity of the legal error and inequity inherent in the majority holding, it is necessary to outline the procedural history in greater detail. The record demonstrates that: (i) the defendants consistently asserted the untenable position that the Cordero RICO claim is patently frivolous and undeserving of serious consideration, thus entitling defendants unilaterally to decline her discovery requests and to disregard the district court orders compelling discovery; (ii) the defendants have never denied – either in the district court or on

appeal – that they violated discovery rules; (iii) the defendants ignored and failed to comply with the district court's orders, without explanation; and (iv) neither the defendants nor the district court ever placed Cordero on notice that the adequacy of the "interstate communication" allegation in her amended complaint was in question.

Defendants' recalcitrance began early on. Hernandez and Moll failed to answer, then defaulted after Cordero submitted her original complaint for breach of contract. When these defaults were vacated, defendants did not submit a motion to dismiss, and the ensuing scheduling-conference order stated that the parties mutually agreed to conduct discovery (viz., depositions, interrogatories, and document requests).

On May 1, 2002, Cordero submitted a thirteen-page amended complaint, which added the RICO count and attached the sworn statement of her hired investigator, Esther Morell. The amended complaint alleged that (i) defendants had engaged in "wire fraud in violation of 18 U.S.C. § 1341," (ii) defendants "conspired to sell [the two stores] to several persons with the aid of the telephone and other means," (iii) defendants "posted advertisements on the store and on [sic] at least one local newspaper seeking potential buyers," (iv) these advertisements "induced potential buyers to call Mr. Moll to arrange a meeting," (v) "Mrs. Morell called Mr. Moll at the telephone number provided by him on the advertisements

-17-

and arranged with him for a viewing of the store," and (vi) Mrs. Morell was a resident of Brentwood, New York. In her scheduling-conference memorandum, Cordero further stated that she would present, as documentary evidence, "[a]ll paperwork related to the attempt by [defendants] to sell El Sol de Puerto Rico to . . . Ms. Esther Morell." The defendants submitted no opposing scheduling conference memorandum.

In its scheduling conference order, the district court (i) granted defendants until November 6 to submit a motion to dismiss, upon pain of waiver, (ii) authorized continuation of the parties' mutually agreed-upon discovery (including the production of documents), and (iii) scheduled the jury trial for April 14, 2003. The defendants failed to file a motion to dismiss by the court-ordered deadline, electing instead, on November 18, to file an untimely motion to extend the deadline until November 27. On November 27, prior to the district court's allowance of the motion to extend the deadline, the defendants filed their motion to dismiss.

The defendants sought dismissal of the RICO claim exclusively on the grounds that (i) Cordero's "improbable" allegations of fraud did not constitute "racketeering activity," and (ii) Cordero obviously "concocted" a RICO claim, by hiring Morell to serve as a prospective buyer of El Sol, for the mere purpose of coercing the defendants into settling the contract

-18-

dispute. At no point in their motion did defendants remotely raise the argument that Cordero's amended complaint failed adequately to allege the occurrence of any interstate communication in furtherance of the alleged fraudulent scheme. Their motion concluded with the request that the district court dismiss the RICO claim "on the above stated grounds."

Not surprisingly, the Cordero opposition to the motion to dismiss focused exclusively on the grounds for dismissal raised in the defendants' motion to dismiss, and never discussed the adequacy of her "interstate communication" allegation. Cordero aptly pointed out that the defendants' factual contention that she had fabricated the RICO claim was not proper grist for a Rule 12(b)(6) dismissal, since the issue was whether her mail/wire fraud allegations were adequately pled, not whether she had adduced evidence to prove her allegations. Cordero reiterated that the verified and sworn statements attached to her amended complaint were "very fact specific" in their disputation of the defendants' "speculative" contentions, and further alleged that the defendants engaged in a fraudulent scheme – viz., not one, but a series of at least two fraudulent sales. She also noted, correctly, that the RICO statute did not require that she prove that Morell had actually been injured by the defendants' scheme. In a footnote describing the elements of mail and wire fraud, Cordero asserted that the fraud statutes do not require that an alleged use of the

mails or the wires itself have been a vehicle for making a fraudulent representation, but instead may simply have been "incidental" to or in furtherance of the scheme.

Cordero observed yet again that her amended complaint had alleged that defendants "tried to sell [El Sol] by placing ads in the newspaper [El Dia Nueva] to attract other victims," and that "we have been able to obtain through discovery the names of other unsuspecting potential victims who approached [defendants] after reading the newspaper advertisements." Cordero expressly offered to provide the discovery documents to the court, if required. She stated, for example: "We have alleged two wire fraud acts in the Complaint [and] [i]f there is a need for it, we will present to the jury other acts of fraud which have and will continue to be discovered through the discovery process." She asserted: "We will [prove the allegations in the complaint] on [sic] trial with the evidence already at hand and with any additional evidence obtained through discovery," and in the same vein, that "[d]uring trial, we will present the evidence <u>available</u> <u>before</u> <u>the</u> <u>Complaint</u> <u>was</u> <u>filed</u>, plus all evidence gathered as a result of the discovery process." (Emphasis added.) From November 2002 through August 2004, the defendants' motion to dismiss languished on the docket, unresolved.

From January through December 2003, Cordero lodged four motions to compel discovery, in which she contended that the defendants blatantly and without explanation ignored her discovery

requests for more than a year, including her requests for their telephone records, in direct contravention of the district court scheduling orders. Defendants Hernandez and Moll filed no oppositions to any of these motions. On March 23, 2003, the district court ordered defendants "to immediately and adequately answer all of Plaintiff's interrogatories," and "to comply with the discovery of documents and all other disclosures as requested by Plaintiff and required by Rule 26." Although the court decided to impose no sanctions on defendants, it stated: "defendants are forewarned that failure to comply with this order will result in the imposition of sanctions."

Six months later, Cordero submitted another motion to compel discovery, contending that defendants had yet to comply with the discovery orders. Cordero requested, inter alia, a status conference to resolve the discovery violation issue. Once again, the defendants failed to respond to the Cordero motion. On August 22, the district court directed the parties to meet within fifteen days in an effort to resolve their discovery disputes, and to inform the court regarding the results of their efforts within five days thereafter. The court stated: "[T]his case has been lagging behind the established discovery schedule due to discovery disputes that could be easily resolved with effective communication and collaboration between the parties. . . . [T]he court forewarns that

-21-

[sic] parties that if further intervention on our part is needed, we will not hesitate to impose the necessary sanctions."

Within days of the district court order, Cordero conscientiously submitted an informative motion, stating that she had attempted to arrange a meeting with the defendants, but that the defendants had asserted schedule conflicts. Cordero announced her intention to submit another motion to compel discovery in the event defendants failed to comply with the district court order to arrange a meeting of the parties. The defendants submitted no informative motion to the court. On November 7, two months after the deadline for filing the informative motion, Cordero submitted a stipulation, for herself and in behalf of the defendants, stating that the parties had been unable to resolve their discovery disputes.

Thereafter, Cordero submitted a fourth motion to compel discovery, once again requesting that the defendants supply, inter alia, their telephone records, and yet again requesting that the court impose sanctions for the unexcused discovery violations. Nevertheless, the defendants failed to respond to the motion, whereupon the district court referred the motion to a magistrate judge for appropriate action. The magistrate judge directed Hernandez to respond to the motion to compel not later than December 30, 2003, otherwise "this motion shall be automatically granted." Once again, Hernandez submitted no response. On

-22-

February 23, 2004, Cordero submitted an informative motion detailing the discovery materials withheld by the defendants.

On August 30, 2004, nearly two years after defendants submitted their motion to dismiss, and without having resolved the pending issue relating to the defendants' noncompliance with the discovery orders, the district court, sua sponte, dismissed the RICO claim, with prejudice, on the ground – never raised in the motion to dismiss – that her amended complaint failed adequately to plead any occurrence of the requisite interstate communication, and that the existence of any such communication was improbable given that all parties resided in Puerto Rico. Additionally, the district court stated that Cordero was neither entitled to more Becher discovery nor to amend her complaint, given that (i) she had been granted three years to discover the requisite interstate communication, yet failed to do so; (ii) the court had granted several Cordero motions to compel discovery from the defendants; and (iii) Cordero already had amended her complaint once to include the RICO count. Cordero now appeals from the district court judgment. Yet the intractability of the defendants persists, as they now decline to submit the required appellate briefs in support of the district court rationale which they presumptively support.

Assessed against the record on appeal, the district court decision is plainly wrong and demonstrably inequitable, notwithstanding the salvage attempts advanced by the majority.

As its initial premise, the majority opinion asserts that the amended complaint submitted by Cordero is too "conclusory," in that it "never explicitly alleged . . . that the phone calls were interstate." Quite the contrary. The amended complaint explicitly alleges that the defendants committed wire fraud in violation of 18 U.S.C. § 1341 by "conspir[ing] to sell [the two stores] to several persons with the aid of the telephone and other means," and by "post[ing] advertisements on the store and on [sic] at least one local newspaper seeking potential buyers." More specifically, the amended complaint then alleges that Moll and Morell, who was a resident of <u>New York</u>, engaged in at least <u>one telephone conversation</u> for the purpose of arranging a meeting at El Sol.

In its effort to skirt the longstanding rule which requires that pleadings be liberally read, see <u>E. Food Servs.</u> v. <u>Pontifical Catholic Univ. Servs. Ass'n</u>, 357 F.3d 1, 8 (1st Cir. 2004), the majority seeks to cast these concrete factual allegations as too "conclusory," or as mere "legal conclusions," with no explanation whatsoever as to how an alleged phone conversation between a resident of Puerto Rico and a resident of New York misses the mark. The only missing information is the

specific date or dates of the alleged telephone communication, which information was the target of the Cordero discovery requests for phone itemizations. While one might well grant that these initial allegations could have been even more specific (e.g., by including the dates of the phone calls), it is utterly unfair to characterize the amended complaint as incurably lacking in specificity respecting the occurrence of an interstate communication. More importantly, the entire purpose of the rule allowing for liberal amendment of pleadings is to permit a plaintiff, who in good faith but mistakenly fails to allege facts with sufficient specificity, a fair opportunity to cure just such deficiencies once brought to his attention. Cordero has been afforded no such opportunity.

## A.        **The Discovery Delays and/or Violations**

In its purported deference to the district court's superior sense for whether continued discovery would likely disclose evidence of an interstate communication, the majority opinion endorses the district court's discretionary decision to deny further Becher discovery on the ground that Cordero had not been diligent in pursuing discovery. Whatever the scope of the discretion Becher would accord the district court in this matter, the instant record contains not a shred of evidence that Cordero was lacking in diligence, nor did the district court cite any such evidence. Thus, the rationale adopted by the majority ultimately

-25-

relies on utter deference to the district court decision, notwithstanding the undisputed allegations that out-of-state parties are involved in this case.

The majority opinion first suggests that Cordero did not even request discovery information which reasonably might lead to evidence of interstate communications, or in the alternative, that Cordero somehow "accepted" that no such evidence was in defendants' possession when she did not object to Moll's response to the "customer" interrogatory. The proposition that the defendants were in "substantial compliance" with discovery orders, which was not even broached by the district court, is demonstrably flawed.

First, Cordero never "accepted" Moll's rather lame "customer" answer; she simply chose not to submit yet another motion to compel against Moll, focusing instead on Hernandez. Elsewhere in the discovery requests submitted to Moll, Cordero clearly had requested Moll's phone records in relation to his attempts to sell the two stores. Further, it cannot be seriously maintained that Cordero did not seek – from all defendants (not only Moll) – detailed itemizations of their phone records during the time period encompassing the sale of the two stores. In letters to defense counsel summarizing her documentary requests, Cordero made her intended target pellucid: "List of all the telephone numbers belonging to, or used by, Mrs. Hernandez Ballesteros and/or Mr. George Moll, and/or itemized bills of such

telephones, and/or authorization to get such bills, for the period 1/1/00 to 12/31/02."  Cordero has never suggested that Moll was the only defendant likely to have contacted Morell in New York.

Second, the defendants have never contended, despite four motions to compel, see infra, that they were in substantial compliance with these discovery requests.  Indeed, the district court deliberately bypassed any determination as to whether or not the defendants were in substantial compliance.  Thus, the majority opinion purports to adopt a finding of fact never made below.  It suggests that we should infer from the district court's refusal to impose sanctions that the defendants were in substantial compliance with their discovery obligations, yet it is uncontested that the district court ordered the defendants to comply, a determination which was plainly superfluous had they already been in substantial compliance.  The district court's refusal to impose sanctions suggests, at most, that it did not care to inquire into the extent of the defendants' noncompliance, and that absent that determination and an additional finding that the defendants' noncompliance was deliberate and in bad faith, sanctions could neither be imposed nor upheld.  See, e.g., Koken v. Black & Veatch Constr., Inc., 426 F.3d 39, 53 (1st Cir. 2005).

As Cordero undeniably sought the defendants' phone records, the only issue on appeal is whether the district court correctly held her accountable for discovery delays.  As the above-

cited procedural history abundantly demonstrates, see supra Section I, Cordero assiduously complied with all scheduling orders and deadlines, promptly submitted motions to compel discovery whenever defendants balked, and kept the district court currently informed.

In contrast, the defendants blithely ignored the district court's orders, as well as its deadlines, declining even to respond to or deny Cordero's discovery allegations. The record utterly betrays the defendants' litigation strategy: decline to take Cordero's RICO allegations seriously, decline to cooperate with her legitimate discovery attempts, and outwait the district court's patience until, hopefully, the case "goes away." Not even the ablest revisionist recordreading could warrant affirmance of the insupportable district court finding that Cordero was less than diligent in her conduct of discovery.[8] For instance, the magistrate judge directed that the defendants respond to the fourth Cordero motion to compel discovery by December 30, 2003, otherwise "this motion shall be automatically granted." The defendants submitted

---

[8]As noted, supra, in ruling on the early Cordero motions to compel discovery, the district court forewarned defendants against persisting in their discovery abuses upon pain of sanctions. Inexplicably, starting in August 2004, the district court began to issue orders in which it suggested, without explanation, that the "parties" were to blame for discovery delays, and threatened to sanction the parties. Yet, the defendants had neither alleged discovery abuses by Cordero, nor sought sanctions against her. In any event, the defendants thereafter failed to respond to the fourth motion to compel filed by Cordero, which was "automatically granted" on December 30, 2003. Hence, the defendants effectively admitted that they – not Cordero – caused the alleged discovery delays.

no response contravening the Cordero allegations of discovery violations, and defendants now persist in their silence by absenting themselves as parties to this appeal. Thus, the record plainly warrants the clear and fair conclusion that the defendants, per their own admission, failed to comply with applicable discovery rules and orders. The readiness of the majority to overlook the district court decision to bypass the pivotal issue as to who caused the discovery delays is of monumental consequence to Cordero. Surely it is entirely reasonable to anticipate that, had defendants provided the requested discovery materials and telephone records, Cordero may well have obtained additional evidence with which to plead the requisite interstate communication with greater specificity.

The majority opines that a Rule 12(b)(6) dismissal was warranted because all "parties" in the case are Puerto Rico-based, yet it is sufficiently alleged in the Cordero complaint that one of the prospective buyers of El Sol and target of defendants' fraudulent representations is a resident of New York. That undisputed fact distinguishes the instant case from those in which all persons allegedly targeted by the fraud were from within the same State, hence it could simply be presumed that the fraudulent scheme was "localized." I can find no authority for the view that the non-resident must be an actual litigant in the case, especially since the Cordero RICO claim depends upon proof of a "pattern" of

racketeering activity inflicted against various third parties. If, as alleged, defendants used interstate communications to lure a third party into their scheme, and if that third party resided outside the state, it is not at all clear how the district court can assume that no evidence of interstate communications could be retrieved from the defendants during discovery.

**B.          Right to Amend the Interstate Communication Allegation**

The majority then turns to the district court's alternative ground for dismissal: the failure adequately to plead the time, place, or content of a particular telephone call. The results are no better, however. Continuing to focus exclusively on whether Cordero was entitled to further <u>Becher</u> discovery, the majority seeks to avoid Cordero's discrete contention on appeal that she was entitled, at least, to an opportunity to amend her complaint based on her pleading proffer on appeal. Thus, the majority opinion misapplies the fundamental principles established by this court in <u>Becher</u>.

In the most typical <u>Becher</u> scenario, the plaintiff submits a RICO claim, but before discovery commences the defendants file a motion to dismiss, asserting that the complaint does not allege the fraudulent conduct with sufficient specificity as to time, place, and content. The <u>Becher</u> case recognizes that, where this particularized evidence of a fraudulent scheme likely is within the exclusive possession and control of defendants, the

district court should consider whether to allow the plaintiff limited discovery to enable compliance with these heightened pleading requirements. Should the plaintiff be unable to demonstrate at this early stage that the defendants likely have such evidence, however, the complaint properly may be dismissed on the assumption that the plaintiff utilized all the evidence at her disposal in making good faith allegations of fraud, and as yet possesses no other evidence which would cure the pleading deficiency. Obviously, in such a scenario Becher discovery is futile, just as allowing the plaintiff an opportunity to amend her complaint would be futile.

In implicitly rejecting the contention that Cordero is entitled (at least) to an opportunity to amend her complaint, the majority mechanically applies Becher in circumstances far removed from the typical scenario described above. First, the defendants never sought to prevent Becher discovery; indeed, the district court scheduling orders indicate that defendants readily agreed to discovery on the RICO claim. Further, even if the district court correctly held that Cordero received all the Becher discovery she wanted or deserved, Becher does not authorize dismissal, with prejudice, at so late a post-discovery stage in the proceedings, without first allowing the plaintiff an opportunity to come forward with any curative materials plaintiff already may have gathered during discovery, as well as curative materials she may have had in

her possession and control prior to the commencement of discovery. In other words, once the plaintiff has learned for the first time that the court considers her allegation defective, Becher does not disentitle her from curing the defect if she can do so. In opposing the defendants' motion to dismiss, Cordero repeatedly informed the court that, if so ordered, she was prepared to proffer "evidence available before the Complaint was filed," as well as "the evidence already at hand."

For example, Cordero contends on appeal that she can amend her complaint to allege a particular telephone call from Moll to Morell at her New York cell phone number. That telephone call, even if it contained no fraudulent representation, plainly satisfied the mail-and-wire-fraud statute requirement that the interstate communication must "further" the alleged fraudulent scheme to sell the stores, since Moll allegedly utilized the phone call to arrange a time for Morell to visit El Sol. See, e.g., United States v. Pimental, 380 F.3d 575, 586 (1st Cir. 2004) (noting that, under mail/wire fraud statutes, the interstate communication need not itself contain fraudulent representations, provided defendants use the communication to execute the fraudulent scheme). Furthermore, this is not the type of evidence which implicates Becher, since presumably the Morell cell phone records have always been in Cordero's control and possession, and not in the defendants' possession, even before discovery commenced in this

case. The majority advances no contention that the proffered allegation would not cure the pleading deficiency which the district court identified.

Similarly, Cordero contends on appeal that she can amend her complaint to allege that the newspaper advertisements for the sale of El Sol constituted an interstate wire communication – hardly a farfetched allegation. El Nuevo Dia, a local newspaper, surely circulates to some extent outside of Puerto Rico (e.g., in mainland libraries), and indeed, it is published as well on the newspaper's internet website, see www.endi.com.; www.clasificados.endi.com/clasificados. (listing real estate classifieds). Cf. United States v. Runyan, 290 F.3d 223, 238-39 (5th Cir. 2002) (noting that transmission of information over internet satisfies "interstate" requirement). The defendants reasonably could have foreseen that their advertisements would reach prospective off-island purchasers.

Rather than assess Cordero's pleading proffer on its merits, however, the majority asserts that she conceded that she could not cure the putative pleading deficiency with information she already had on hand, but needed further discovery. It cites her postjudgment motion for reconsideration, in which she argued:

> We do not argue against this Court's assertion that a R.I.C.O. cause of action must be stated with specificity, the elements of the federal criminal action in particular.

-33-

> However, although we have been aware all along that interstate communications were used, we could not specify which because the defendant's (sic) were dragging their feet, with this Court's approval through its inaction. Not much need be argued, the Court is well aware of our efforts and of the defendant's (sic) obstruction to them. What is surprising is that now the Court uses the defendant's (sic) failures to comply with the laws and the Court's orders against the victims of those failures. We really don't understand this Court's posture in light of all the abuses by the defendants before, and during the case."

The majority's assessment of the legal import of the quoted language is seriously flawed.

First, after Cordero filed the instant appeal, the district court granted her motion to <u>withdraw</u> the pending motion for reconsideration. Thus, the reconsideration motion is a legal nonentity. Had the majority truly wanted to hold Cordero to the contents of the motion to withdraw, fairness would demand that we dismiss this appeal for lack of jurisdiction, allow her to reinstate her motion to reconsider in the district court, and await the district court's disposition of that motion on its merits. The majority cannot have it both ways.

Second, the passage cited from the motion is not even a concession. Cordero submitted her motion to reconsider only four

days after judgment, and she elected to focus on the unfairness of the district court's unexpected holding that she was responsible for discovery delays. In that fuller context, the intent of her language is clear: how could the district court dismiss her RICO claim because no evidence of an "interstate communication" had turned up when it was the defendants who were fully responsible for that failure? Cordero simply asserts that, before the court dismissed her RICO claim, she had the right to expect that the defendants would fully comply with her discovery requests and turn over all the evidence in their exclusive possession concerning interstate communications which remained in defendants' exclusive possession. At this juncture, Cordero reasonably may not have reviewed the voluminous material that she had on hand for evidence that defendants had engaged in an interstate phone conversation or placed their advertisement in a newspaper with interstate circulation. Whatever the reason, the fact that she did not include this alternative argument in her motion obviously does not constitute a forfeiture of her right to make that argument on her appeal from the underlying judgment of dismissal. See Colon-Santiago v. Rosario, 438 F.3d 101, 111 (1st Cir. 2006) ("[A]lthough a party may file a motion for reconsideration, filing such a motion in no way obligates a party to bring up every possible reason for reconsideration or else waive the right on appeal to challenge any argument not brought up."). Once the district court granted her

motion to withdraw her motion to reconsider, therefore, Cordero remained free to appeal the underlying <u>sua</u> <u>sponte</u> dismissal on any ground she would have raised had she received prior notice and opportunity to be heard, including that she possesses evidence upon which she could base a good-faith allegation that Moll made an interstate communication to Morell in New York.

Finally, the majority opinion's characterization of the motion language as a "concession" makes no sense. Cordero's pleading proffer on appeal states unequivocally that she has two specific pieces of evidence on hand which will cure the "interstate communication" allegation, yet the majority has not attempted to identify any sound basis for concluding that the Cordero proffer would not effect a cure. There is no record evidence to suggest that Cordero is lying, nor have defendants contested the <u>bona</u> <u>fides</u> of her proffer (or for that matter any other issue). To suggest that the Cordero motion to reconsider intentionally or irrevocably conceded the opposite proposition effectively penalizes Cordero for failing to muster all her arguments in her motion for reconsideration, a penalty specifically proscribed by our case law. See <u>Colon-Santiago</u>, 438 F.3d at 111.

**C.        <u>Due Process</u>**

The core problem with the rationale adopted in the majority opinion is that normally we liberally allow motions to amend in reviewing Rule 12(b)(6) dismissals. <u>See</u> <u>E. Food Servs.</u>,

357 F.3d at 8 (noting that leave to amend "is often granted not only pretrial but <u>after</u> a dismissal for failure to state a claim where the court thinks that the case has some promise and there is some excuse for the delay").  The liberal nature of the rule should obtain with special force in the instant case since Cordero was never placed on notice of the alleged pleading deficiency prior to the dismissal of her complaint by the district court:

> <u>Sua</u> <u>sponte</u> dismissal is rarely appropriate . . . . "<u>Sua</u> <u>sponte</u> dismissals are strong medicine, and should be dispensed sparingly."  "The general rule is that 'in limited circumstances, <u>sua</u> <u>sponte</u> dismissals of complaints under Rule 12(b)(6) . . . are appropriate,' but that 'such dismissals are erroneous unless the parties have been afforded notice and an opportunity to amend the complaint or otherwise respond.'"

<u>Cepero-Rivera</u> v. <u>Fagundo</u>, 414 F.3d 124, 130 (1st Cir. 2005) (citations omitted).

Here, however, the "alternative rationale" adopted by the district court utterly blindsided Cordero.  The majority implies that the district court's dismissal with prejudice may not be a true <u>sua</u> <u>sponte</u> dismissal, in that this is not a case where defendants failed to raise an issue in their motion to dismiss, but where the grounds for dismissal were not "fully briefed."  In all fairness, however, the defendants are not guilty of briefing the

issue of the inadequacy of the interstate communication allegation less than "fully." The defendants' motion to dismiss did not even remotely mention or challenge the adequacy of the Cordero "interstate communication" allegation. The defendants explicitly moved for dismissal only "on the above stated grounds." As no one contested the adequacy of this latter allegation, Cordero was reasonably entitled to conclude that the defendants were conceding the allegation, and she therefore rationally refrained from interposing opposition.

Thus, endorsement of the district court's sua sponte rationale implicitly would demand that the Cordero opposition to the motion to dismiss have contained a refutation of every conceivable ground for dismissal, even including those never raised in the defendants' motion. Never before have we held plaintiffs to so impossible a standard. Moreover, had the district court been concerned about this matter, at the very least it should have given Cordero notice and an opportunity to be heard on the issue prior to deciding whether to dismiss her amended complaint. At that juncture, Cordero could have made the pleading proffer to the district court in the first instance, then requested leave to amend the complaint to cure the putative defect, rendering the instant appeal utterly unnecessary.

Citing Cepero-Rivera v. Fagundo, 414 F.3d 124, 130 (1st Cir. 2005), the majority opinion proposes that any due process

violation is harmless because Cordero has made her arguments on appeal, and those arguments have been dismissed on the merits. A sua sponte dismissal may be harmless in some circumstances, but this certainly is not such a case. Cepero, for example, found a dismissal harmless because the plaintiff's claim, even if not subject to dismissal under Rule 12(b)(6), nonetheless was subject to dismissal on summary judgment (viz, failure of plaintiff to establish a prima facie case). Here, by contrast, the defendants never moved for summary judgment, and the only ground for dismissal was failure to allege, not failure to make an adequate Rule 56 proffer. Hence, the district court's sua sponte dismissal of the Cordero RICO claim can only be deemed "harmless" if, on appeal, we afford her the opportunity to present her arguments regarding her ability to amend her complaint to cure the putative deficiency in her interstate communication allegation, as she would have done had the district court given her notice and an opportunity to be heard before the court dismissed her complaint. See Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We hold similarly that the lack of prior notice of a sua sponte dismissal with prejudice for failure to state a claim is harmless when, as here, the plaintiff has a reasonable post-judgment opportunity to present his arguments to the district court and the appellate court, including the opportunity to suggest amendments that would cure the complaint's deficiencies."); Buchanan v. Manley, 145 F.3d 386, 389 (D.C. Cir.

1998) (same).  As the majority opinion does not accord her that very opportunity, see supra Section II.B., I am unable to discern how any due process violation may be considered "harmless."

After reviewing the record, it is not difficult to comprehend the district court's pique at the lengthy delays, but its impatience was plainly misdirected at the wrong party.  A Rule 12(b)(6) dismissal, with prejudice, cannot be affirmed merely on an unarticulated hunch that a RICO claim lacks merit.  Although procedural rules are designed to filter out non-meritorious claims, plainly not all claims can be adjudicated under Rule 12(b)(6), which inquires only whether the plaintiff has pleaded a cause of action, as distinguished from whether she has proven it.  As the defendants' intransigence precluded the completion of discovery, the Cordero claim has yet to be tested under the more demanding summary judgment rubric.

## III

The majority's implicit decision to deny the reasonable request that Cordero be accorded her first adequate opportunity to address the "interstate communication" issue entails several serious consequences which surely ought, in all fairness, not be allowed to obtain.  First, it penalizes an exemplary plaintiff who doggedly pursued discovery, and played by the rules.  Second, it rewards defendants who egregiously assumed they may ignore a legal claim which they consider non-meritorious, and that if they can

-40-

ignore it long enough, the trial court ultimately will oblige by dismissing the claim in utter exasperation. Such blatant shenanigans can be countenanced only at the expense of establishing an extremely unwise precedent. The correct course would be to vacate the dismissal with prejudice, remand the case to the district court, either for a definitive disposition of the Cordero discovery motions on the merits, or permit Cordero an opportunity to amend her complaint to cure the putative deficiency in her "interstate communication" allegation. For these reasons, I respectfully dissent.