# United States Court of Appeals
## For the First Circuit

No. 04-1401

FRANK CEPERO-RIVERA; JENNIFER CEPERO-SALGADO,
Plaintiffs, Appellants,

v.

ENGINEER FERNANDO E. FAGUNDO, Executive Director of the
Puerto Rico Highway Authority (PRHA); HARRY DÍAZ-VEGA, Area
Director for Human Resources of PRHA; ROBERTO SANTIAGO-CANCEL,
Auxiliary Director of Human Resources of PRHA; ERIC RAMÍREZ-
NAZARIO, SAMUEL DE LA ROSA, WILLIAM VEGA, All Three Members of
the Appeals Committee of the PRHA; HOWARD PHILLIP FIGUEROA,
Auxiliary Administrative Officer of the PRHA; PUERTO RICO
HIGHWAY AUTHORITY; JOSÉ IZQUIERDO-ENCARNACIÓN, Secretary of the
Department of Transportation and Public Works,
Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Jay A. García-Gregory, U.S. District Judge]

---

Before
Boudin, Chief Judge,
Torruella, Circuit Judge,
and Carter,* Senior District Judge.

---

Jesús Hernández-Sánchez, with whom Raúl Barrera-Morales,
Fredeswin Pérez-Caballero and Jesús Hernández-Sánchez Law Firm,
were on brief, for appellants.
Gloriana S. Hita-Valiente, with whom Llovet Zurinaga & López,
PSC, was on brief, for appellees.
Ineabelle Santiago-Camacho, with whom Beatriz Annexy Guevara
and Reichard & Escalera, were on brief, for appellee Puerto Rico
Highway Authority.

---

July 1, 2005

---

* Of the District of Maine, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Plaintiff-appellant Frank Cepero-Rivera was the Director of Labor Affairs of the Human Resources Department of the Puerto Rico Highway Authority ("PRHA"), until he was terminated for violations of the PRHA's Rules and Regulations.  Cepero-Rivera and his daughter, Jennifer Cepero-Salgado, claim that Cepero-Rivera's termination was motivated by his political affiliation in violation of his constitutional rights pursuant to 42 U.S.C. §§ 1983 & 1985, and they now appeal the district court's dismissal of their claims against certain defendants, its grant of summary judgment in favor of defendant Fernando Fagundo, and its determination that the procedures followed in Cepero-Rivera's termination did not violate due process.  After examining the record, we reject each of appellants' arguments, and affirm the order of the district court.

## I.  Facts

The chain of events leading to appellant Cepero's firing began on September 24, 2001, when Cepero-Rivera wrote a letter to the former PRHA Executive Director, Fernando Fagundo, requesting a salary increase in accordance with a PRHA regulation that required a one-step pay increase for employees who had not been given a pay raise equivalent to one step in the pay scale over the preceding five years.  In the letter, Cepero-Rivera also stated that he possessed a list of the salaries and fringe benefits of several recently-appointed female employees.  Based on this information, he

alleged gender and age discrimination, and that the salary raises given to those female employees violated the merit principle established in the PRHA Personnel Handbook.

Cepero-Rivera did not receive the response he had hoped for. On January 2, 2002, Fagundo sent Cepero-Rivera a letter denying his request for a salary raise because he had received six pay raises in as many years with the PRHA. In the same letter, Fagundo informed Cepero-Rivera that he had ordered the PRHA's legal department to investigate possible violations of the Puerto Rico Penal Code and several articles of the PRHA's Disciplinary Measures Handbook, including two alleged violations of infraction 37 of the Handbook, which prohibits using confidential personnel records for personal gain. Fagundo's letter outlined the underlying facts relating to Cepero-Rivera's admitted possession of other employees' confidential information in his September letter and a previous instance in which he appended portions of defendant Howard Phillip's confidential personnel records to a memorandum about Phillip. Fagundo's letter additionally alleged insubordination and involvement in various incidents with other PRHA employees. The letter informed Cepero-Rivera of Fagundo's intentions to file disciplinary measures, which could result in dismissal, and that an informal hearing was to be held on January 18, 2002. The January 2, 2002 letter was Cepero-Rivera's first notice of defendants' intentions to take disciplinary measures against him.

-3-

On January 10, 2002, Cepero-Rivera sent a letter to Fagundo responding to the allegations that he had misused confidential personnel records and requesting more information about the specific facts underlying the insubordination and misconduct allegations. Cepero-Rivera's request was never answered by defendants. On January 17, 2002, Cepero-Rivera sent Fagundo a handwritten note stating that the January 2 letter did not state the time of the hearing, and thus, he was handing in certain documents "as evidence of [his] appearance in writing to the informal hearing." On February 22, 2002, Cepero-Rivera received a letter officially terminating his employment with the PRHA.

## II.  **Analysis**

Appellants make four distinct arguments on appeal. First, appellants claim that district court erred in requiring Cepero-Rivera to present a prima facie case of political discrimination against Eric Ramírez-Nazario, Samuel De La Rosa, and William Vega. Second, appellants argue that the district court erred in dismissing, sua sponte, the claims against Harry Díaz-Vega, Roberto Santiago-Cancel, and Howard Phillip Figueroa. Third, appellants challenge the grant of summary judgment in favor of defendant Fernando Fagundo for failure to rebut defendants' proffered nondiscriminatory basis for Cepero-Rivera's dismissal. Finally, Cepero-Rivera argues that the procedure leading to his

termination did not afford him due process of law.  We address each of plaintiffs' claims in turn.

**A.  <u>The District Court's Misapplication of the Prima Facie Case Standard</u>**

Appellants contend that the district court incorrectly applied a heightened pleading standard to Ramírez's, De la Rosa's, and Vega's motion to dismiss.  Although the district court in large part correctly described the motion to dismiss standard, <u>see</u> <u>Rivera v. Fagundo</u>, 301 F. Supp. 2d 103, 106 (D.P.R. 2004), it also stated that appellants' claims should be dismissed for failure to "establish a <u>prima facie</u> case of political discrimination," <u>id.</u> at 108.  Appellees concede that appellants did not have the burden of establishing a <u>prima facie</u> case in order to survive a motion to dismiss.  However, they argue that appellants nevertheless clearly failed to meet their burden under the proper Fed. R. Civ. P. 8(a)(2) standard, and thus, the ultimate decision to dismiss should be affirmed.  We agree.

"For years, courts in this circuit [had] required plaintiffs to satisfy a heightened pleading standard in civil rights actions."  <u>Educadores Puertorriqueños en Acción</u> v. <u>Hernández</u>, 367 F.3d 61, 62 (1st Cir. 2004).  However, in <u>Hernández</u>, this court recognized that the Supreme Court's decision in <u>Swierkiewicz</u> v. <u>Sorema N. A.</u>, 534 U.S. 506 (2002), "sounded the death knell for the imposition of a heightened pleading standard except in cases in which either a federal statute or specific Civil

-5-

Rule requires that result." Hernández, 367 F.3d at 66.  "In all other cases, courts faced with the task of adjudicating motions to dismiss under Rule 12(b)(6) must apply the notice pleading requirements of Rule 8(a)(2)."  Id.  Since there is no federal statute or specific Federal Rule of Civil Procedure mandating a heightened pleading standard for civil rights actions such as the political discrimination claims at issue in this appeal, the notice pleading standard, not the heightened pleading standard formerly applied in this circuit, governs motions to dismiss.

The case before us appears at first glance to present precisely the same situation that we resolved in Hernández.  As in Hernández, the district court in this case dismissed plaintiffs' political discrimination claims on the basis that plaintiffs failed to establish a prima facie case.  Compare Rivera, 301 F. Supp. 2d at 108, with Hernández, 367 F.3d at 63.  On this basis, in Hernández, we remanded the case to the district court to  proceed in light of the proper standard.  367 F.3d at 68. Appellants ask that we follow suit in the instant case.

Notwithstanding the citations to the "prima facie case" standard, it does not, however, appear that the district court in this case applied a heightened pleading standard.  Rather, it looked to the complaint and found that the allegations therein failed to make out a claim against these defendants.  Furthermore, we find that remand would be unnecessary, because appellants'

claims in question clearly fail to survive the proper Rule 8(a)(2) notice pleading standard.

Under Rule 8(a)(2), a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 66. "This statement must 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Under this standard, "a court confronted with a Rule 12(b)(6) motion 'may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Id. (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

Appellants' allegations against defendants Ramírez, De la Rosa, and Vega are not simply vague or lacking in specificity. Rather, they consist entirely of speculation about possible future conduct by the defendants. Defendants are members of PRHA's Appeals Committee, which is to hear the administrative complaints Cepero-Rivera filed as a result of the actions taken against him. Cepero-Rivera claims that these defendants "will entertain a pending appeal . . . and will carry out the public policy of discrimination because of their political ideology against plaintiff and are ready to rubber stamp the decision of co-defendant Fagundo." Rivera, Amended Complaint, ¶ 10 (emphasis

added).  To date, the only proceedings that have taken place on this matter before the Appeals Committee, have been:

> "(1) attempts by Cepero-Rivera to consolidate both complaints, which were denied; (2) a request by the PRHA for Cepero-Rivera's counsel to withdraw, because of conflict of interest issues; (3) a request by Cepero-Rivera to stay the administrative proceedings pending resolution of this case; and (4) a hearing called by Ramírez for the sole purpose of recusing himself from both complaints because he appeared as a defendant in this case."

Rivera, 301 F. Supp. 2d at 107-08.

To prevail in a § 1983 claim, plaintiffs "must allege facts sufficient to support a determination (i) that the conduct complained of has been committed under color of state law, and (ii) that [the alleged] conduct worked a denial of rights secured by the Constitution or laws of the United States." Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 32 (1st Cir. 1996) (citations omitted).  As an additional corollary, only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable.  Cf. Febus-Rodríguez v. Betancourt-Lebrón, 14 F.3d 87, 91-92 (1st Cir. 1994) (finding that there is no § 1983 liability on the basis of respondeat superior, and thus, "[a] supervisor may be found liable only on the basis of his own acts or omissions"); Wilson v. City of N. Little Rock, 801 F.2d 316, 322 (8th Cir. 1986) (finding, in a § 1983 action against police officers, that "[l]iability may be found only if there is

-8-

personal involvement of the officer being sued"). As the district court correctly recognized, defendants "Ramírez, De la Rosa, and Vega have not taken any action adverse to plaintiff, nor did they have anything to do with Fagundo's and PRHA's decision to terminate Cepero-Rivera from his employment." Rivera, 301 F. Supp. 2d at 108. Since these defendants clearly played no part in any action taken against plaintiff, we have no difficulty concluding that "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" against these defendants. Hernández, 367 F.3d at 66 (internal quotations omitted). Thus, this unusual attempt to rope in defendants whose only actions against defendant might come at some point in the future fails the notice pleading standard. We therefore affirm the district court's dismissal of the claims against defendants Ramírez, De la Rosa, and Vega.

**B. Dismissal of the Claims against Díaz, Santiago and Phillip**

Unlike their co-defendants on the Appeals Committee, defendants Díaz, Santiago, and Phillip did not seek Rule 12(b)(6) dismissal of the claims against them. Nevertheless, the district court dismissed the claims against Díaz, Santiago, and Phillip sua sponte. We find that the court's sua sponte dismissal was in error, but that the error was harmless because the court should have granted defendants' motion for summary judgment.

-9-

Sua sponte dismissal is rarely appropriate, and should not have been entered under these circumstances. "Sua sponte dismissals are strong medicine, and should be dispensed sparingly." Chute v. Walker, 281 F.3d 314, 319 (1st Cir. 2002) (quoting González-González, 257 F.3d 31 at 33). "The general rule is that 'in limited circumstances, sua sponte dismissals of complaints under Rule 12(b)(6) . . . are appropriate,' but that 'such dismissals are erroneous unless the parties have been afforded notice and an opportunity to amend the complaint or otherwise respond.'" Id. (quoting Futura Dev. of P.R., Inc. v. Estado Libre Asociado de P.R., 144 F.3d 7, 13-14 (1st Cir. 1998)). Because the plaintiffs in this case were not given notice or an opportunity to amend their complaint, sua sponte dismissal was in error.

Nevertheless, we find that the error is harmless because the district court should have granted Díaz's, Santiago's and Phillip's motion for summary judgment. In its decision, the district court dismissed the claims against Díaz, Santiago, and Phillip in the course of its analysis of "Defendants' Motion for Summary Judgment." Rivera, 301 F. Supp. 2d at 110-11. The court found that "Cepero-Rivera had failed to establish a prima facie case against Díaz, Santiago, and Phillip by failing to demonstrate that they were personally and directly involved in the alleged violation of his rights." Id. at 111. Having found that the appellants failed to meet this summary judgment threshold, the

district court should have granted summary judgment in favor of these defendants. However, at this point, the court erroneously chose to grant <u>sua</u> <u>sponte</u> dismissal instead. Nevertheless, we find, for the same reasons alluded to by the district court, that appellants' failed to establish a <u>prima</u> <u>facie</u> case, and thus, summary judgment should have been granted.

With regard to defendants Díaz, Santiago, and Phillip, appellants alleged in their complaint that:

> 8. Co-defendant Santiago Cancel, [sic] planned along with co-defendant Howard Phillip Figueroa to provoke an incident with plaintiff, which took place as follows: Co-defendant Phillip Figueroa went to plaintiff's office to provoke him, informing the latter that he was coming to see him under the instructions of co-defendant Santiago Cancel. Co-defendant Phillip Figueroa asked plaintiff Why [sic] he did not resign and leave his position to a PDP attorney.
> 9. Co-defendant Harry Díaz Vega, Area Director for Human Resources of the PRHA, talked to plaintiff several times, criticizing him because plaintiff was protesting for the illegal action taken by co-defendant Fagundo in appointing some female personnel with a high salary and in violation of the merit system. Also, he told plaintiff the new administration's goals, which was [sic] to have employees in key positions, loyal to the PDP and pointed to plaintiff that he was from the NPP and that he should join the PDP. Plaintiff refused and replied "I'd rather be dead."

<u>Rivera</u>, Amended Complaint, paras. 8-9. Nothing in appellants' Opposition to [Defendants'] Motion for Summary Judgment or in the record significantly adds to these allegations. The district court

-11-

described these claims as a "general and unsubstantiated 'conspiracy theory,'" and found that Cepero-Rivera had failed to show how these defendants played any role in the alleged violation of his rights. Rivera, 301 F. Supp. 2d at 111. Cepero-Rivera claims that these defendants "all conspired with Fagundo to provoke Cepero-Rivera into confrontations in order to justify his dismissal." Id. However, even assuming -- as we must on summary judgment -- that these confrontations occurred exactly as Cepero-Rivera recounts them, they played little if any role in creating the primary basis cited for Cepero-Rivera's dismissal: his alleged use of confidential documents. Furthermore, Cepero-Rivera makes no other claim as to how defendants Díaz, Santiago and Phillip played any role in the actual termination decision or process.

In order for appellants to succeed on their claim of political discrimination, they must demonstrate that the defendants were involved in the alleged deprivation of their rights -- in this case, Cepero-Rivera's dismissal from the PRHA. Imposition of liability requires that "the conduct complained of must have been causally connected to the deprivation." Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989) (internal quotations omitted). In this case, the allegations against Díaz, Santiago, and Phillip could help build a prima facie case against Fagundo, who the record suggests was involved in the decision to terminate Cepero-Rivera's employment. However, since appellants have made no

allegation, and we see no reason to infer, that defendants Díaz, Santiago and Phillip were involved in the decision to dismiss Cepero-Rivera, or that their alleged attempts to provoke Cepero-Rivera led to his discharge, summary judgment should have been granted in favor of these defendants. Furthermore, we note that these defendants would also be entitled to summary judgment for the same reasons we explain below with regard to defendant Fagundo. Therefore, the district court's <u>sua</u> <u>sponte</u> dismissal, though in error, did not prejudice the appellants, and we do not disturb the final disposition reached by the district court with regard to these defendants.

## C. <u>Summary Judgment in Favor of Defendant Fagundo</u>

The remaining individual defendant in this case is PRHA Executive Director Fernando Fagundo, who ordered the investigation leading to Cepero-Rivera's dismissal. We now consider appellants' challenge to the district court's grant of summary judgment in favor of defendant Fagundo.

We review the district court's entry of summary judgment <u>de</u> <u>novo</u>, viewing all facts in the light most favorable to the nonmoving party and granting all reasonable inferences in that party's favor. <u>See</u>, <u>e.g.</u>, <u>Torres</u> v. <u>E.I. Dupont De Nemours & Co.</u>, 219 F.3d 13, 18 (1st Cir. 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

-13-

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  We will also uphold summary judgment where "the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation," Rivera-Cotto v. Rivera, 38 F.3d 611, 613 (1st Cir. 1994) (internal quotation omitted).

Claims of political discrimination are subject to the burden-shifting analysis developed after Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977).  Under that analysis, "a plaintiff bears the initial burden of showing that political discrimination was the substantial or motivating factor in a defendant's employment decision.  The defendant must then show that the decision would have been the same even in the absence of the protected conduct."  Avilés-Martínez, 963 F.2d at 5 (internal citations omitted).  Because "Fagundo acted under color of state law, belongs to an opposing political party, is the one directly responsible for Cepero-Rivera's dismissal, and it is alleged that Cepero-Rivera's political affiliation was the basis for his actions," the district court found that appellants' claims against Fagundo established a prima facie case.  Rivera, 301 F. Supp. 2d at 111.

Once plaintiffs establish a prima facie case, "[t]he burden then shifts to the defendant official to articulate a

nondiscriminatory basis for the adverse employment action, and prove by a preponderance of the evidence that the adverse action would have been taken regardless of any discriminatory political motivation."[1]  LaRou v. Ridlon, 98 F.3d 659, 661 (1st Cir. 1996); see also Rodríguez-Ríos v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998).  In this case, defendants had little difficulty laying out the nondiscriminatory reasons for Cepero-Rivera's dismissal. Defendants contend, and appellants do not deny, that Cepero-Rivera's letter of September 24 stated that he possessed a list of female employees' salaries and fringe benefits.  Even viewed in the light most favorable to appellants, we cannot but conclude that this letter gave Fagundo every reason to believe that Cepero-Rivera had improperly obtained this information from personnel files in violation of PHRA regulations.  Defendants also allege, and Cepero-Rivera does not deny, that he had previously attached forty-eight pages of Phillips' personnel file to a letter in which he argued

_____

[1]  We stress that under the Mt. Healthy burden shifting scheme, unlike Title VII cases, the burden of persuasion actually shifts to defendants after plaintiff establishes a prima facie case.  See Acevedo-Díaz v. Aponte, 1 F.3d 62, 67 (1st Cir. 1993).  Under Title VII, once the plaintiff establishes a prima facie case, the employer need only submit enough evidence to raise a genuine issue of material fact – i.e., only the burden of production shifts to the employer.  Id.  However, in a First Amendment political discrimination case, in which the Mt. Healthy scheme is applicable, "the burden of persuasion shifts to the defendant, [and] the plaintiff-employee will prevail unless the fact finder concludes that the defendant has produced enough evidence to establish that the plaintiff's dismissal would have occurred in any event for nondiscriminatory reasons."  Id.

that Phillips was mentally unstable -- an impermissible use of confidential personnel information under PRHA regulations. In addition, defendants allege, and Cepero-Rivera does not deny, that he refused to recognize the appointment of Santiago as his direct supervisor, which defendants characterize as insubordination. Like the district court, we find that, given the seriousness of Cepero-Rivera's violations of PRHA regulations, defendants easily meet their burden of showing, by a preponderance of the evidence, that Cepero-Rivera would have been dismissed regardless of his political affiliation. See Larou, 98 F.3d at 661. Once Cepero-Rivera made the misstep of claiming physical possession of confidential personnel records, it is difficult to see how a supervisor in Fagundo's position could have done anything less than order an investigation, potentially resulting in the employee's dismissal.

Nevertheless, at this point, "the plaintiff[s] may discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor." Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 77 (1st Cir. 2000). Appellants' efforts in this regard fail to convince us that discrimination was more likely than not a motivating factor in Cepero-Rivera's dismissal. Appellants offer nothing to directly undermine the credibility of the proffered nondiscriminatory reasons for Cepero-Rivera's dismissal. Their only attack on the

-16-

substance of these allegations is the contention that when Cepero-Rivera said he had "in [his] power a list of the[se] employees . . . with their salaries and fringe benefits," he meant only that he had a copy of the office telephone book, from which he could deduce his female employees' salaries.  Even accepting Cepero-Rivera's explanation, we find that the explanation is so implausible that it should not have caused any doubt in the minds of the PRHA officials considering his termination.  Having been told by Cepero-Rivera himself, when he thought it suited his interest, that he possessed a list of salaries and fringe benefits of the organization's female employees, we do not see why his employers should believe Cepero-Rivera's later explanation that he had meant only that he had made such a list himself by guessing at salary and benefits from the office phonebook, especially in light of his earlier use of portions of Phillip's confidential information.  Thus, although on summary judgment we assume Cepero-Rivera's explanation to be genuine, it does not undermine defendants proffered nondiscriminatory basis.

In their brief, appellants contend that defendants' proffered reasons for Cepero-Rivera's dismissal were "nothing but an excuse to justify the real reason, which was politically motivated."  However, they offer only meager evidence to support that contention.  Appellants allege that Fagundo once asked Cepero-Rivera when he was leaving his position, since a new administration

-17-

had taken office. However, they do not offer any evidence that this incident was anything more than a mistake as to Cepero-Rivera's status as a career employee. Nor do they assert that there was any follow-up conversation or point to other indicia of animus toward Cepero-Rivera on the part of Fagundo. Appellants also state that Phillip suggested that Cepero-Rivera should resign and leave his post to a PDP employee, and that Díaz suggested that Cepero-Rivera change his party affiliation to the PDP. This type of evidence can serve to show that the proffered nondiscriminatory basis for an employee's dismissal was only pretext. However, given the gravity of the charges against Cepero-Rivera, and the fact that they are based on his own admissions that he possessed confidential personnel information, this evidence fails to demonstrate that political discrimination was more likely than not a motivating factor in his dismissal.

Appellants' arguments that the charges against Cepero-Rivera were time-barred also fail to convince us that defendants' reasons for Cepero-Rivera's dismissal were mere pretext, particularly as they do not reach the primary charge of personnel file misuse. Appellants' only remaining arguments address irregular procedures followed in the course of his dismissal. However, these arguments do not relate to the grounds for Cepero-Rivera's dismissal. We consider these arguments in our discussion of his due process claims.

## D. **Due Process Claims**

Appellants additionally claim that Cepero-Rivera's dismissal violated his procedural due process rights. There is no dispute between the parties that Cepero-Rivera was a career employee, and as such was entitled to "notice and a meaningful opportunity to respond prior to termination." Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 5-6 (1st Cir. 2000) (quotations omitted). Before a career employee is discharged, he is "entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985). "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." Id.

The process leading up to Cepero-Rivera's termination began with Fagundo's January 2, 2002 letter in response to Cepero-Rivera's September 24, 2001 letter arguing for a salary increase and alleging gender bias in favor of female employees. In addition to responding to his request and allegations, the letter informed Cepero-Rivera: (1) that he was under investigation for possible violation of PRHA regulations, because he had used confidential personnel documents for personal benefit; (2) that Fagundo intended to file charges against him that could result in the termination of

-19-

his employment; (3) that he had the right to a pre-termination hearing; and (4) that an informal hearing would take place on January 18, 2002 in the Office of the Legal Counsel's library, where he could present his version of the facts and show cause as to why disciplinary measures should not be instituted against him.[2] On January 10, Cepero-Rivera responded with a letter in which he answered a number of the allegations against him and requested more information about others. He also requested that the informal hearing scheduled for January 18 be continued to a later date. No one in the PRHA administration responded to this letter, and on January 17, Cepero-Rivera addressed a note to Fagundo asserting that the January 2 letter did not state the time of the hearing, and "[t]hus, [he was] handing in these documents as evidence of [his] appearance in writing to the informal hearing." Cepero-Rivera did not attend the January 18 informal hearing, and on February 22, Executive Director Fagundo sent a letter officially discharging Cepero-Rivera from his position.

Appellants claims that this procedure was constitutionally deficient in a number of ways. First, appellants

---

[2] Cepero-Rivera claims this notice was deficient for, among other reasons, its failure to state the time of the scheduled hearing. However, he does not claim to have made any attempt to find out the time of the hearing. In fact, it seems the first time he mentioned the failure to specify a time was in the note he wrote to Fagundo the day before the scheduled hearing, in which he stated that he would not attend. Like the district court, we assume that this information could have been easily obtained, and we do not consider its omission to be a fatal flaw in the notice provided.

seem to claim that Cepero-Rivera was not provided sufficient notice of the facts underlying the allegations for which he might be dismissed. After a thorough review of the record, we find that appellants overstate this claim. At the outset, we note that the principal allegations against Cepero-Rivera related to his use of confidential personnel documents, which, in one instance, he appended to a memorandum regarding defendant Phillip and, in the other, he stated he possessed in his letter of September 24, 2001. These facts underlying the violation of the PRHA's Disciplinary Measures Handbook infraction 37 -- the only infraction that defendants claim allows for termination after a single violation -- were clearly laid out in Fagundo's January 2 letter. Although we agree that the factual underpinnings of the accompanying allegations lacked the specificity included in the most serious allegations, we do not find that they fall below the constitutional baseline. See, e.g., Brasslett v. Cota, 761 F.2d 827, 836 (1st Cir. 1985) (finding no due process violation even where an employee was notified of the possibility of discharge during the same "one hour conference" that constituted his informal hearing).

Nor do we see any merit in Cepero-Rivera's claims regarding his request for a continuance. At no time did Cepero-Rivera assert that he could not attend the informal hearing on the scheduled date. Rather, his request was apparently based entirely on his belief that he needed more specific facts in order to craft

a defense. However, in his zeal to defend himself, Cepero-Rivera may have misunderstood the nature of a pre-termination hearing. Due process requires only that the pre-termination hearing fulfill the purpose of "an initial check against mistaken decisions -- essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Loudermill, 470 U.S. at 545-46. As evidenced by his own thorough written responses to the allegations against him, Cepero-Rivera was given ample notice of the bases for the termination proceedings against him.

Although the PRHA failed to make any response to Cepero-Rivera's request for a continuance, common sense and Cepero-Rivera's own note of January 17 indicate that he knew that the hearing was still set for January 18. In fact, in that note, Cepero-Rivera stated that he was submitting his case in writing rather than appear in person at the informal hearing. Cf. Mercado-Alicea v. P.R. Tourism Co., 396 F.3d 46, 53 (1st Cir. 2005) (finding that where plaintiff failed to attend his informal hearing after multiple reschedulings, defendants "did not violate [plaintiff's] due process rights when his inability to present his side of the story was due to his failure to participate"). While it is regrettable that the PRHA did not respond to Cepero-Rivera's request for a continuance and for additional facts, we have explained that "the Constitution requires only an initial check

against erroneous decisions, not that the state follow best practices." O'Neill v. Baker, 210 F.3d 41, 49 n.10 (1st Cir. 2000). In this case, Cepero-Rivera was given an opportunity to attend an informal pre-termination hearing; he simply chose to present his arguments in writing. Due process requires nothing more from his employer at that stage.

### III. Conclusion

For the foregoing reasons, we affirm the decision of the district court.

**Affirmed**.