Carlos CALDERON–GARNIER,
Plaintiff

v.

Hon. Roberto SANCHEZ–RAMOS,
et al., Defendants.

Civil No. 05–1495 (JP).

United States District Court,
D. Puerto Rico.

Jan. 9, 2008.

Israel Roldán–González, Aguadilla, PR, for Plaintiff.

Francisco A. Ojeda–Diez, Esq., P.R. Department of Justice, Patricia Lorenzi, Esq., Delgado & Fernández Fernández Juncos Station, San Juan, PR, Eduardo A. Vera–Ramírez, Esq., Eileen Landrón–Guardiola, Esq., Julio César Alejandro–Serrano, Esq., Landrón & Vera LLP, Guaynabo, PR, for Defendants.

*OPINION AND ORDER*

JAIME PIERAS, JR., Senior District Judge.

The Court has before it motions for summary judgment filed by Defendants Anabelle Rodríguez, Sila Calderón, Pedro G. Goyco, Cruz Estévez and Roberto Sánchez–Ramos (**Nos. 101 and 103**), and Plaintiff Carlos M. Calderón–Garnier's response in opposition to both motions (No. 115). For the reasons stated herein, the Defendants' motions are **GRANTED.**

Plaintiff Carlos M. Calderón–Garnier ("Calderón") is a former prosecutor with the Puerto Rico Department of Justice ("PRDOJ"). He alleges that Defendants suspended and terminated him from his position due to his political affiliation and in retaliation for exercising his freedom of speech. Pursuant to an Opinion and Order entered on June 13, 2006 (No. 39), only Plaintiff's Article 1802 claims, and Section 1983 claims for violations of the First Amendment and of the Due Process Clause of the Fourteenth Amendment remain before the Court.

The Defendants move for summary judgment on the grounds that Plaintiff's claims are time-barred, that Plaintiff failed to state a claim, and that Defendants are entitled to qualified immunity.

### I. *MATERIAL FACTS NOT IN DISPUTE*

The parties stipulated to the following facts at the Initial Scheduling Conference held on October 27, 2006 (No. 72):

1. The Plaintiff was notified by letter dated December 23, 2003 by then Secretary of Justice Anabelle Rodríguez that he was suspended from employment as Auxiliary Prosecutor II and that she would recommend to then Governor Sila Calderón that he be removed from the position.

2. Anabelle Rodríguez's determination to suspend the Plaintiff from employment was based on the finding made by the Office of the Inspector General regarding a number of complaints made against Plaintiff.

3. On December 5, 2002, a complaint was filed by District Attorney Luis A. Vázquez–Marín. On March 31, 2003, the complaint was referred to the Office of the Inspector General for investigation. The complaint referred to events that occurred on November 15, 2002 and on December 3 and 4, 2002. The complaint alleged that the Plaintiff incurred in conduct unbecoming, including lack of discipline, and reproachable conduct.

4. On June 23, 2003, another complaint was filed by District Attorney Cruz Estévez de González regarding events occurring on June 13 and 16, 2003. The complaint alleged the Plaintiff engaged in insubordination and improper conduct toward then acting District Attorney Federico Torres. In addition, there were allegations regarding the Plaintiff's inaction on a domestic violence case.

5. On November 4, 2003, another complaint was filed against Plaintiff by then General Attorney Pedro G. Goyco for alleged acts of insubordination that occurred on October 30, 2003 at the Annual Public Ministry Convention.

6. The Office of the Inspector General investigated the complaints filed against Plaintiff and determined that the allegations made against Plaintiff in the complaints were true.

7. The Plaintiff requested by letter dated January 5, 2004 that an informal administrative hearing be held.

8. The case was then assigned to a hearing examiner who took charge of the informal hearing in the case.

9. By certified letter dated January 10, 2004, the hearing examiner appointed by the Department of Justice set the informal administrative hearing for January 21, 2004 at 9:30 a.m. On that date, the Plaintiff did not attend the hearing.

10. On January 21, 2004, due to the fact that the hearing examiner had not received by mail the confirmation card, and under the possibility that Plaintiff had not received the January 10, 2004 notification, the hearing examiner issued a Resolution rescheduling the hearing for February 2, 2004 at 9:30 a.m.

11. On February 3, 2004, a new Resolution was issued rescheduling the informal administrative hearing for February 9, 2004. This rescheduling was made after the Plaintiff's legal representation presented arguments regarding Plaintiff's treatment by the State Insurance Fund.

12. In the February 3, 2004 Resolution, Plaintiff was advised as to the different alternatives he had in order to give his version of the facts, to wit: in writing, personally, or through his attorneys.

13. In a Resolution dated February 6, 2004, the hearing was again rescheduled for February 13, 2004, after Plaintiff's counsel stated that he had not received the February 3, 2004, Resolution and he had a scheduling conflict.

14. On February 13, 2004, Plaintiff did not appear at the hearing, but both of his attorneys did appear.

15. Plaintiff was granted a final opportunity until February 19, 2004 at

12:00 p.m. to submit in writing his version of the facts regarding the allegations made against him.

16. Plaintiff failed to submit his version of the facts by the February 19, 2004 deadline.

17. On April 2, 2004 the hearing examiner, Reina Colón de Rodríguez, issued her report.

18. The report states that the hearing examiner concluded the Plaintiff incurred in a pattern of insubordination, lack of respect, and contempt to the orders of his supervisors, and to the disposition of law and norms that regulate the duties and obligations of all prosecutors, among other findings.

19. The report states the hearing examiner recommended to then Governor Sila Calderón to dismiss the Plaintiff from his position as Auxiliary Prosecutor II.

20. On May 12, 2004 then Governor Sila Calderón addressed a letter to Plaintiff, dismissing him from employment.

21. The letter states that the report submitted by the Inspector General and the report submitted by the hearing examiner revealed that the acts proven against Plaintiff constituted just cause to dismiss him from his position as Auxiliary Prosecutor II, as per Article 5 of Act 23 of July 24, 1952, as amended.

22. The letter notified Plaintiff that he was dismissed from his position based on the authority granted to the Governor by Act 23, and that he had the right to appeal the Governor's determination to the Public Servants Appellate Commission.

23. Plaintiff has no document that states Anabelle Rodríguez was aware of his political affiliation.

24. Plaintiff is a U.S. citizen and a resident of San Juan, Puerto Rico.

25. Plaintiff was a prosecutor at the Department of Justice of Puerto Rico from 1995 to 2004.

26. At the time of his dismissal from the Department of Justice, Plaintiff had been assigned to the District Attorneys' Office in Arecibo, Caguas, Aibonito, and Fajardo.

27. In November of 2000, Sila Calderón, of the Popular Democratic Party ("PDP"), won the general elections. She took office in January of 2001.

28. Plaintiff was transferred to Aibonito on October 17, 2001, and to Fajardo on July 19, 2002.

29. On October 30, 2003, Plaintiff was at the premises of the Ministry ("Conferencia del Ministerio Público") and staged a protest.

30. A complaint for the acts of October 30, 2003 was filed by the Plaintiff before the Tourism Police Division of Carolina.

31. During his time at the District Attorney's Office in Fajardo, the Plaintiff was involved with an investigation into acts of vandalism and destruction of U.S. Navy property in Vieques.

The following are deemed uncontested facts by the Court as they were included in Defendants' motions for summary judgment, and were agreed upon, or were properly supported by evidence and not sufficiently opposed:

A. The Plaintiff was appointed Assistant District Attorney to the PRDOJ on March of 1995 by Governor Pedro J. Roselló.

B. Governor Roselló was affiliated with the New Progressive Party ("NPP").

C. The Plaintiff identified with the NPP's ideology.

D. While the Plaintiff worked at the Fajardo office he was required to work shifts that lasted for twenty-four hours and seven days per week.

E. The shifts were only required of a few prosecutors, all affiliated with the NPP.

F. Plaintiff claimed that this practice was unjust, unfair, dangerous and selectively required.

G. After the meeting held on November 18, 2002, Plaintiff's supervisor, Fajardo District Attorney Luis Vázquez–Marín, told Plaintiff that he was following orders from Defendant Goyco to watch Plaintiff closely and not to permit him to make decisions regarding criminal investigation without prior approval.

H. In January of 2003, Plaintiff issued subpoenas for a criminal investigation involving Commonwealth and municipal officials.

I. Those officials facilitated the use of public land by protest groups under the pretext of permitting the groups to hold a festival, allowing the protestors to vandalize property belonging to the U.S. Navy property.

J. Around April 30, 2003, Plaintiff's criminal investigation revealed that Commonwealth and municipal employees and equipment were used in acts of vandalism against U.S. property in an incident where a U.S. Department of Fish and Wildlife official was severely battered.

K. Soon after the Plaintiff reported the results of his investigation, Defendant Estévez told him he was removed from the investigation by order of Defendant Rodríguez.

L. Defendant Goyco warned Plaintiff that if he showed his poster during the conference, he would be terminated.

M. Defendant Goyco and another Department of Justice employee shouted at Plaintiff not to show his poster, and that they had enough trouble from the Plaintiff due to his investigations, and that he would be fired.

N. During the afternoon hours, some agents used force while taking away his placards and pushing and holding Plaintiff.

O. Defendant Rodríguez ordered an investigation of the Plaintiff's work performance.

P. On November 14, 2003, Plaintiff met with the General Inspector of the Puerto Rico Department of Justice. Plaintiff had been summoned to appear for this meeting on November 7, 2003.

Q. At the meeting of November 14, 2003, Plaintiff was informed of all the complaints filed against him.

R. The meeting was confirmed by letter dated November 24, 2003.

S. In the letter of November 24, 2003, Plaintiff was informed of the three charges of insubordination against him.

T. In his deposition, Plaintiff testified that in the letter of November 24, 2003, he was informed of the charges against him.

U. Plaintiff received the letter of November 24, 2003 on December 1, 2003.

V. On December 2, 2003, Plaintiff was served a subpoena to appear at the offices of the Inspector General.

W. On December 22, 2003, the Office of the Inspector General issued its report explaining the findings against Plaintiff.

X. On December 22, 2003, the Office of the Inspector General of the Puerto Rico Department of Justice issued a final report as to the three complaints filed against Plaintiff Calderón.

Y. In said report, the Inspector General concluded that Plaintiff Calderón incurred in a conduct pattern of insubordination and/or duty abandonment and failure to comply with the functions and duties, which had been reflected for many years. It further concluded that Plaintiff Calderón demonstrated incompetence and professional inability manifested in the performance of functions and duties, as well as infringing the Political Code, the District Attorney's Act, the Public Services Act, in addition to the Puerto Rico Department of Justice's Administrative Orders. The report concludes, after discussing the applicable sanction, that the applicable sanction is suspension or dismissal, being the recommendation that Plaintiff Calderón be suspended with the intention of dismissing him.

Z. On December 23, 2003, Defendant Rodríguez issued a letter of suspension to Plaintiff expressing the basis for the charges against him.

a. Anabelle Rodríguez's determination to suspend Plaintiff from employment was based on the finding made by the Office of the Inspector General regarding a number of complaints made against Plaintiff.

b. Plaintiff testified that the letter of December 23, 2003, "expresses essentially the things that are expressed in the December 1st letter."

c. The letter of December 23, 2003, among other things informed Plaintiff that he was being suspended from employment.

d. In the letter of December 23, 2003, Defendant Rodríguez advances that she will recommend to the Governor his destitution.

e. Immediately after the charges were presented, Plaintiff was suspended from employment, was prohibited from performing his duties, from entering his office and from carrying a firearm.

f. On January 8, 2004, Defendant Rodríguez sent a letter to Plaintiff informing him that she designated Reina Colón de Rodríguez as Examining Officer.

g. On January 10, 2004, Reina Colón de Rodríguez informed Plaintiff that she had been assigned by the Secretary of Justice to preside over the informal hearing after Defendant Rodríguez suspended him from employment and notified him of her intent to recommend to the Governor of Puerto Rico that he be removed from his position. She informed Plaintiff that the hearing was being scheduled for January 21, 2004.

h. The letter of January 10, 2004, also informed Plaintiff that the purpose of the hearing is to hear his version of the facts and he is warned that his non appearance will be considered a waiver to the hearing and that she will proceed to prepare the corresponding report without further summoning or hearing him.

i. Plaintiff received the letter of January 10, 2004 on January 28, 2004; that was after the scheduled hearing.

j. On February 2, 2004, the Examining Officer received a fax from Sánchez–Hernández, Esq.

k. Plaintiff did not know his particular diagnosis in medical terms and did not take any medication.

l. In the Resolution of February 3, 2004, the Examining Officer indicated that the rescheduling of the hearing for February 9, 2004 is final and irrevocable. Also, Plaintiff was ordered to appear on his behalf or through his attorney Sánchez–Hernández or any other attorneys to present his version of the facts verbally or written. Once again, Plaintiff was warned that his non-appearance will be considered a waiver of the hearing and that the Examining Officer would proceed to prepare the corresponding report without further summoning or hearing him.

m. In addition, the Resolution of February 6, 2004, states in pertinent part: "District Attorney Calderón has the options to appear on his own behalf, represented by Attorney Sánchez Hernández, or by any other attorney to present his version, verbally or in writing, of the events of which he is accused. If he does not present his version verbally or in writing at the hearing scheduled for February 13, it will be considered a voluntary and intelligent waiver of the hearing and the corresponding report will be presented without further summoning or hearing him."

n. In the hearing of February 13, 2004, counsel for Plaintiff stated what they had been alleging since January 30, 2004, that Plaintiff could not be present because the State Insurance Fund recommended he rest while receiving treatment.

o. Since the processing of Plaintiff's case with the State Insurance Fund does not put a hold on the proceedings in cases such as Plaintiff's case, the hearing in question was rescheduled first on February 9 and then on February 13, 2004.

p. The Resolution of March 2, 2004 in pertinent part states that: "[Counsel for Plaintiff] also argued that District Attorney Calderón had not been advised of the right he believes he had to confront the evidence against him in order to prepare adequately. This proposal was dismissed based on the resolution issued by the Honorable Supreme Court of Puerto Rico in the case *Marrero Caratini v. Rodríguez Rodríguez*, 138 D.P.R. 215 (1995)."

q. Plaintiff testified that after December 23, 2003, the day Defendant Rodríguez sent the letter of suspension, she did not commit an act of political discrimination.

r. Plaintiff is familiar with the Norms of Conduct of the Puerto Rico Department of Justice that applies to District Attorneys.

s. Plaintiff also received the Administrative Order of the Rules of Conduct and Disciplinary Actions and Corrective Measures of the Department of Justice.

t. On June 17, 2003, then Secretary of Justice Anabelle Rodríguez issued Administrative Order 2003–05, titled Rules of Conduct, Corrective Measures and Disciplinary Actions, in order to establish the rules of behavior and conduct as to the employees of the Puerto Rico Department of Justice, and the mechanisms to implement the same.

u. Plaintiff is familiar also with the conduct identified above. On Au-

gust 4, 2003, Plaintiff signed an Acknowledgment of Receipt in which he confirmed having received Administrative Order Number 2003–05 on Rules of Conduct, Corrective Measures and Disciplinary Actions.

v. According to Plaintiff Calderón, Defendant Cruz Estévez belongs to the NPP.

w. According to Plaintiff, Defendant Cruz Estévez had no decision-making power regarding Plaintiff Calderón's termination.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment serves to assess the proof to determine if there is a genuine need for trial. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Zambrana–Marrero v. Suárez–Cruz*, 172 F.3d 122, 125 (1st Cir.1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993); *Canal Ins. Co. v. Benner*, 980 F.2d 23, 25 (1st Cir.1992). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct.

2505, 2510, 91 L.Ed.2d 202 (1986). In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *See Mack v. Great Atl. and Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989).

On a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the movant meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Goldman*, 985 F.2d at 1116.

## III. ANALYSIS

### A. FAILURE TO STATE A CLAIM UNDER SECTION 1983

■ Section 1983 provides a procedural mechanism for enforcing federal constitutional or statutory rights. *See Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Under Section 1983, a plaintiff must identify the particular federal right that he seeks to enforce via judicial proceedings. In order to prevail on a Section 1983 claim, a plaintiff must demonstrate that the defendant (1) acted under color of state law and (2) deprived him of the identified federal right. *See Cepero–Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir.2005) (quoting *Romero–Barceló v. Hernández–Agosto*, 75 F.3d 23, 32 (1st Cir.1996)).

■ A defendant incurs Section 1983 liability only if he was personally involved in the deprivation of rights asserted by a plaintiff; a defendant may be found liable only on the basis of his own acts or omissions. *See id.; see also Gutiérrez–Rodríguez v. Cartagena,* 882 F.2d 553, 562 (1st Cir.1989); *Rosado De Vélez v. Zayas,* 328 F.Supp.2d 202, 209 (D.P.R.2004). A plaintiff may demonstrate personal involvement by showing an affirmative link between the deprivation and the defendant's conduct. *See Cepero–Rivera,* 414 F.3d at 129; *see also Aponte Matos v. Toledo Dávila,* 135 F.3d 182, 192 (1st Cir.1998). "That affirmative link must amount to 'supervisory encouragement, condonation or acquiescence, or gross negligence amounting to deliberate indifference.' " *Aponte Matos,* 135 F.3d at 192 (quoting *Lipsett v. Univ. of P.R.,* 864 F.2d 881, 902 (1st Cir.1998)).

### 1. *First Amendment Political Discrimination*

■ The First Amendment protects public employees who do not hold confidential policy-making positions from adverse employment actions based on political affiliation. *See Branti v. Finkel,* 445 U.S. 507, 517–519, 100 S.Ct. 1287, 63 L.Ed.2d 574(1980); *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (extending the prohibition on patronage dismissals to include promotion, transfer, recall, or hiring decisions). To state a claim of political discrimination upon which relief may be granted, a public employee must allege that he engaged in constitutionally-protected conduct and that this conduct was a substantial or motivating factor in the adverse employment decision. *See Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Acevedo–García v. Vera–Monroig,* 204 F.3d 1 (1st Cir.2000); *Padilla–García v. Rodríguez,* 212 F.3d 69, 73 (1st Cir.2000) (emphasizing that the protected conduct

need only be a factor in the employment decision, not the motivating factor). This showing requires more than merely "juxtaposing a protected characteristic—someone else's politics—with the fact that Plaintiff was treated unfairly." *Correa–Martínez v. Arrillaga–Beléndez,* 903 F.2d 49, 58 (1st Cir.1990); *see also Rodríguez–Ríos v. Cordero,* 138 F.3d 22, 24 (1st Cir. 1998) (evidence demonstrating that defendants were politically active and were aware of plaintiff's opposing views). Nevertheless, a plaintiff need not produce direct evidence of discriminatory treatment to establish a prima facie case of political discrimination; circumstantial evidence alone can support a finding of political discrimination. *Acosta–Orozco v. Rodríguez–de–Rivera,* 132 F.3d 97, 102 (1st Cir. 1997). The plaintiff must point to evidence on the record which, if credited, would permit a rational fact finder to conclude that the challenged action occurred and stemmed from politically based discriminatory animus. *González–De–Blasini v. Family Department,* 377 F.3d 81, 85 (1st Cir.2004).

■ If the plaintiff has shown that his political affiliation was a substantial or motivating factor in the adverse employment decision, the defendant will not be held liable if it would have taken the same employment actions anyway, without regard to plaintiff's political affiliation. *See Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *see also Sánchez López v. Fuentes Pujols,* 375 F.3d 121, 124 (1st Cir.2004). The Supreme Court has made clear that a defendant's *Mt. Healthy* defense serves to prevent an employee who would have received an adverse employment decision based on legitimate reasons from being in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had

**222**

he done nothing. *Mt. Healthy*, 429 U.S. at 285, 97 S.Ct. 568, 50 L.Ed.2d 471.

█ Plaintiff Calderón argues that the Defendants deprived him of his First Amendment rights by discriminating against him politically. The Defendants argue that they are entitled to summary judgment on the Section 1983 claims because there is no genuine issue as to whether Plaintiff Calderón was deprived of a federally secured right. Even considering the facts in the light most favorable to the Plaintiff, the Court agrees with Defendants that Plaintiff fails to state a *prima facie* case of political discrimination.

█ Plaintiff Calderón fails to prove that he engaged in constitutionally-protected conduct. His Section 1983 claims for First Amendment violations do not succeed because there is no genuine issue as to whether his protest was a matter of public concern. Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. *Connick v. Myers*, 461 U.S. 138, 147–148, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). In some cases the content alone establishes the public nature of the matter; in others the form and context make it so:

> Where a public employee speaks out on a topic which is clearly a legitimate matter of inherent concern to the electorate, the court may eschew further inquiry into the employee's motives as revealed by the "form and context" of the expression. On the other hand, public-employee speech on a topic which would not necessarily qualify, on the basis of its content alone, as a matter of inherent public concern (e.g., internal working conditions, affecting only the speaker and co-workers), may require a more complete *Connick* analysis into the form and context of the public-employee expression, "as revealed by the whole record," with a view to whether the community has in fact manifested a legitimate concern in the internal workings of the particular agency or department of government, and, if so, whether the "form" of the employee's expression suggests a subjective intent to contribute to any such public discourse.

*O'Connor v. Steeves*, 994 F.2d 905, 913–914 (1st Cir.1993). Moreover, the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities. *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 1961, 164 L.Ed.2d 689 (U.S. 2006) (holding that when government employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment purposes, and the Constitution does not shelter their communications from employer discipline).

Plaintiff Calderón filed his complaint alleging that he was terminated because he associated with the NPP and because he engaged in speech related to his political affiliation. In reality, his speech pertained only to his shift length and to his supervision on certain cases. This is a classic example of speech concerning internal working conditions affecting only the speaker and co-workers that is pursuant to official responsibilities.

Although the record reflects that other prosecutors belonging to the NPP worked the twenty-four hour shifts, it does not reflect that all NPP-affiliated prosecutors were required to work those shifts. There is no other evidence in the record that the Plaintiff's work hours differed from that of his co-workers' with different political affiliations. Also, there is no evidence in the record demonstrating that other members of Plaintiff Calderón's party complained of similar discrimination.

█ Moreover, the record does not reveal that the community has manifested

a legitimate concern in the internal workings of the PRDOJ in terms of the hours worked by the prosecutors, nor does the form of Calderón's expression suggest a subjective intent to contribute to public discourse on this issue. Although the issue of vandalism on Navy property may be a matter of public concern, its relevance in this case is only to the Plaintiff's work-related duties pertaining to an investigation of the same. The disciplinary actions that were taken against Plaintiff Calderón in relation to the Vieques investigation fall squarely into the unprotected speech analyzed in *Garcetti, supra,* because they were managerial disciplinary measures based on an employee's expressions made pursuant to official responsibilities. As such, Defendant's motion for summary judgment on Plaintiff's claim of First Amendment political discrimination must be granted.

### 2. *Due Process Clause of the Fourteenth Amendment*

■■■■■ The Due Process Clause of the Fourteenth Amendment guarantees public employees with a property interest in continued employment the right to an informal hearing prior to being discharged. *Kauffman v. Puerto Rico Tel. Co.,* 674 F.Supp. 952, 956–957 (D.P.R.1987). To prevail on a procedural due process claim, a plaintiff must establish a protected liberty or property interest, and allege that while acting under color of state law the defendants deprived him of that interest without adequate process. *Aponte–Torres v. Univ. of P.R.,* 445 F.3d 50, 56 (1st Cir.2006). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■■■ Under Puerto Rico law, a prosecutor may be terminated only following a verified complaint and an investigation by the Secretary of Justice. P.R. Laws Ann. tit. 3 § 93b (1952). The Secretary may then refer charges, and if the charges are "proven," the Secretary then must report to the Governor, and the Governor "shall determine the action to be taken." *Id.*

Plaintiff Calderón alleges the Defendants violated his Fourteenth Amendment procedural due process rights by failing to provide him a pre-termination hearing. Defendants argue that the Plaintiff did not have a property interest in his employment, and that Plaintiff was provided with a hearing prior to his termination. The Court must determine whether (1) Plaintiff had a property right in his employment as a prosecutor at the PRDOJ, and (2) Plaintiff was provided a hearing, meeting the requirements of due process, prior to his termination.

The Court will first consider the second prong, regarding the hearing, as Defendants' allege one was provided to Plaintiff. The Court agrees with Defendants that Plaintiff was afforded due process prior to his termination. It is clear from the stipulated facts that Plaintiff was put on notice of the complaints against him and of his right to request a hearing to present his side of the story. When Plaintiff requested a hearing, a hearing officer was assigned and a date was set. Plaintiff did not appear at the hearing, so another one was scheduled in the event that Plaintiff had not received the summons. The second hearing was rescheduled at Plaintiff's attorney's request. A hearing was finally held where Plaintiff's counsel attended, but Plaintiff himself did not attend. Plaintiff was given a final opportunity to present his case in writing, but he failed to meet the deadline for the written report.

The First Circuit has held that a plaintiff's due process rights are not violated when the plaintiff's inability to present his side of the story is due to his own failure to participate in scheduled hearings. *Mercado–Alicea v. P.R. Tourism Co.*, 396 F.3d 46, 53 (1st Cir.2005) (holding that the plaintiff's due process rights were not violated when the plaintiff failed to appear at a hearing three times and when he did not object to his dismissal in writing). It is clear from the record that Plaintiff Calderón's alleged lack of due process was a result of his own failure to participate. Moreover, the fact that the hearings were rescheduled and that Plaintiff was represented by counsel at a hearing further support Defendants' argument that no due process violation occurred.

Given that the Court finds Defendants met their burden of providing Plaintiff with the opportunity for a hearing prior to his termination, it is not necessary to continue the analysis to determine whether Plaintiff had a property interest in his position as a prosecutor for the Puerto Rico Department of Justice. Thus, Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment due process claims.

## B. *CLAIMS UNDER PUERTO RICO LAW*

Plaintiff Calderón also sought relief under Article 1802 of the Puerto Rico Civil Code. The Court will enter judgment dismissing the federal claims in this case, and will decline to exercise supplemental jurisdiction over the claims arising under Puerto Rico law. Judgment will be entered dismissing Plaintiff's Article 1802 claims without prejudice.

## IV. *CONCLUSION*

In conclusion, the Court **GRANTS** Defendants' motions for summary judgment. A separate judgment will be entered dismissing Plaintiff Carlos Calderón's Section 1983 claims with prejudice, and dismissing Plaintiff Carlos Calderón's claims arising under Puerto Rico law without prejudice.

**IT IS SO ORDERED.**